ST. LOUIS, SAN FRANCISCO & TEXAS RAILWAY COMPANY v. M. L. WIGGINS.

Decided January 9, 1908.

**1.—Personal Injuries—Joint Tort Feasor—Liability.**

In a suit against both a railroad company and a traction company for damages for personal injuries, the jury having found upon sufficient evidence that the traction company was guilty of such negligence as, either alone or concurring with that of the railroad company, proximately caused the plaintiff's injuries, it was not error for the court to exclude evidence offered by the traction company for the purpose of showing that the railroad company was also negligent in a certain particular.

**2.—New Trial—Cumulative Evidence.**

A new trial should not be granted for the purpose of enabling a party to the suit to offer evidence which is merely cumulative of evidence adduced upon the trial. Application for new trial upon the ground of newly discovered testimony considered, and held properly refused.

**3.—Personal Injuries—Collision of Cars—Negligence—Charge.**

In a suit for personal injuries resulting from a collision between the cars of a railroad company and a traction company, charge of the court upon the issue of negligence vel non on the part of the employees of the traction company in the care which they exercised before attempting to cross the railroad track, considered, and held correct and sufficiently specific to justify the trial court in refusing a special charge upon the same subject.

**4.—Charge—Application to Facts—Special Charge.**

Where the general charge of the court fails to make a practical application of the rules of law governing the case to the specific facts relied upon and adduced in evidence, either party has the right to have such omission cured by special charge tendered for that purpose; but this rule applies only to such facts as in law constitute a defense. Rule applied.

Appeal from the District Court of Tarrant County. Tried below before Hon. Irby Dunklin.

*West, Chapman & West* and *Capps, Cantey, Hanger & Short,* for appellant.

*W. H. Slay* and *W. P. McLean,* for appellee.

HODGES, ASSOCIATE JUSTICE.—On or about the 1st day of February, 1905, the appellee was injured in a collision between one of the cars of the North Texas Traction Company and some box cars

belonging to the other appellant, the St. Louis, San Francisco & Texas Railway Company. The collision occurred at the junction of the two tracks in the city of Ft. Worth. Appellee brought suit to recover damages for the injuries so sustained, and recovered a judgment against both of the defendants in the court below in the sum of $3,724.

In his petition appellee alleged that he was a passenger in one of the cars of the Traction Company at the time of the collision, and that said collision was occasioned by the negligence of the Traction Company in failing to use reasonable and proper care in approaching the railroad track and in running over same while said freight train was approaching the crossing; in failing to observe that the freight train was approaching the crossing; in failing to stop the car before attempting to make the crossing for the purpose of ascertaining whether or not there was danger of a collision with an approaching train; and in failing to use reasonable and proper care to avoid a collision. That said collision was also caused by the negligence of the appellant Railroad Company in failing to give proper signals in approaching the crossing; in failing to stop before crossing the street railway track; in failing to keep a proper lookout for cars running on said railway track; in failing to use proper care and caution in approaching the crossing and thereby failing to observe the street railway car with which it collided in time to avoid a collision. He further alleged that said collision occurred on a public street in the city of Fort Worth, and that the freight train struck the street car with great violence, completely demolishing same, derailed some of the cars of the freight train and hurled the passengers of the street car a great distance; that by reason of said collision appellee was thrown about 40 or 50 feet and he thereby sustained the injuries for which the suit was instituted.

The North Texas Traction Company answered by a general demurrer and general denial, and specially pleaded such facts as tended to show that it exercised proper care in approaching the crossing, and that the collision was the sole result of the negligence of the Railroad Company. The appellant, the St. Louis, San Francisco & Texas Railway Company, also answered by a general demurrer and general denial, and especially denied that the collision was caused by its negligence, claiming that it was the direct result solely of the negligence of the Traction Company.

The collision which caused the injuries to the plaintiff in this suit took place early in the morning, before daylight, and during a cloudy and drizzly spell of weather. The street car was going south toward the city of Fort Worth, and the freight train was going northeast, and had three box cars in front of the engine which were being pushed along and thereby obscuring the headlight of the engine and rendering it difficult for people at or near the crossing to discover its approach. It seems that the freight train had just started on its usual journey from Fort Worth to Sherman and was carrying the cars in front of the engine as far as a stock yard, situated just beyond the crossing, to save the trouble of switching. The evidence was conflicting as to whether or not the operatives

in charge of the train gave the usual and required signals indicating the approach of the train, or whether there was a brakeman with a light on any of the cars in front of the engine, and if there was, whether he kept a proper lookout. The street car was an electric car, was brightly lighted, and, according to the preponderance of the testimony, was stopped within a few feet of the railroad track just before the attempt was made to cross; but the operatives, so they testified, failed to discover the approach of the freight train, although they claimed to have looked up and down the track. The evidence was also conflicting as to the speed of the freight train, various estimates being given by the witnesses, ranging from 6 to 12 miles per hour; but the street car was demolished to such an extent as to indicate that the train was going at rather a rapid rate. No watchman had been stationed at the railway crossing to guard against accidents, although it was extensively used by the public, being the main thoroughfare between Fort Worth and North Fort Worth, and over which two street car companies operated cars. Appellee sustained personal injuries as a result of the collision, for which a judgment was recovered against both the Railroad Company and the Traction Company for the sum above mentioned. Both of the defendants in the court below have appealed.

In its first assignment of error the Traction Company, one of the appellants, complains of the action of the court in sustaining the objection of the Railroad Company to the introduction of certain testimony sought to be elicited on cross-examination by the Traction Company. The purpose of this proffered evidence was to show that the Railway Company was guilty of negligence in not having its bell rung as required by law as its train approached the crossing where the collision occurred, the question being as to whether or not the witness could have heard the bell if any had been ringing. The record does not disclose what the answer of the witness would have been had he been permitted to answer. If he had given an affirmative reply its effect would have been merely to show that no bell was ringing at the time and that the employes of the Railroad Company were negligent to that extent. Admitting the fact sought to be proved by this witness to be true, in view of the finding of the jury it could not benefit the Traction Company. The jury have found that the latter was guilty of such negligence as, either alone or concurring with that of the Railway Company, proximately caused the appellee's injuries; and no complaint is made of the sufficiency of the evidence to sustain that finding. It is therefore immaterial, so far as the Traction Company is concerned, whether the bell was rung or not. The fact that it was rung did not militate against the Traction Company, nor would the fact that it was not rung relieve that company of the negligence charged to its account by the jury; it could only affect the concurrent liability of the Railway Company.

In the second and third assignments of error appellant, Traction Company, assails the ruling of the court in admitting certain testimony at the instance of the Railroad Company. This testimony, while it might have been considered wholly immaterial, could

not have affected this appellant injuriously, and the assignments are overruled. There was no reversible error in refusing to permit the Traction Company on cross-examination to prove that the head brakeman of the Railway Company, who it was shown wore glasses, did not have his glasses on at the time the collision occurred.

The basis of the fifth assignment of error is the refusal of the court to grant a new trial on account of newly discovered evidence which the appellant Traction Company claims it was not able to produce upon the trial of the cause. This testimony is set out in an affidavit by the motorman who was in charge of the street car at the time the collision occurred, but who was not present and did not testify upon the trial. The substance of the facts to which the witness claims he would testify is as follows: That he was the motorman in charge of the car at the time of the accident, and just before starting on the return trip, and not exceeding ten minutes before the collision, he went outside of his car and carefully rubbed off all dampness, fog, mist and rain on the glass of the vestibule of the car, and that at the time of the collision there had not been any fog, mist or rain accumulated on the window of the front of the vestibule sufficient to in any way obstruct the view of anyone inside the vestibule in attempting to look out and make observations outside of the car through the windows of the vestibule; that at the time he cleaned and rubbed off the glass, as stated, the conductor, according to his belief, had no knowledge of that fact; that he had not discussed this feature of his action with anyone whatever, and did not know that it had anything to do with the case or would throw any possible light on the transaction. He further states that if there had been a light on any approaching train on the railroad track he would have seen the same, and that the glass in the vestibule was in such condition that there would have been no difficulty for him or anyone else in the vestibule to have seen the lights of any approaching trains; that if the bell on the train had been ringing he could and would have heard it. He further states that before attempting to cross the track, and while the car was about a car's length away from the track he stopped the car, and that both he and the conductor made complete observation up and down the railway track for an approaching train, and that he carefully listened for the noise or signal of an approaching train but heard none; that he could have heard the bell or whistle if any had been given. Appellant presents what might be termed sufficient reasons for not having the testimony of this witness upon the trial in the court below. The question is, was this testimony of such importance as to justify us in reversing the judgment of the court below for a refusal to grant a new trial upon the showing made by the appellant?

It is well settled that a new trial should not be granted for the purpose of enabling a party to a suit to offer evidence which is merely cumulative of testimony previously adduced upon the trial. The only fact in the testimony set out in the Traction Company's showing which was not testified to upon the trial is that with reference to cleaning off the glass of the vestibule by the absent wit-

ness before starting on the return trip. In the connection in which it is offered we do not think this is material. The only purpose for which it could be used would be to prove that the glass of the vestibule was not so bedimmed with fog, or mist, as to obstruct a view up and down the track of the railroad on that occasion. The conductor of the street car, a witness for the Traction Company, was present with the motorman in the vestibule at the time the observations are claimed to have been made, and knew as much about the condition of the glass as the motorman did. He testified on cross-examination that it was a damp morning, and that the window glass was to some extent dampened by mist. On his re-direct examination by the counsel for the Traction Company, and by way of explaining how he arrived at that conclusion, he stated that "it was reasonable to suppose that there would be mist on the glass; that there was always more or less mist on the glass." We do not think the effect of this testimony was to show that the glass of the vestibule was so dimmed by mist that one on the inside could not see the light of an approaching train on the railroad track. If the appellant Traction Company desired to show more fully the extent to which vision through the glass was interfered with by the mist gathered on it, this could have been done by this witness. If that fact was material to their defense it should have been developed on the trial by their own witness, who, from his own testimony, must have been fully cognizant of the condition of the glass at the time. He was the witness by whom the Traction Company established the fact that he made efforts to ascertain whether or not a train was approaching the crossing, and that he did so by looking through the glass of the vestibule of the car. If the glass was clear, or dim from the accumulation of mist, such condition could not have escaped his observation under such circumstances. We do not think there was any error in refusing the new trial upon those grounds.

In the last assignment of error urged by the Traction Company complaint is made of the refusal of the court to permit the introduction of certain rules of the Railroad Company for the guidance of its employes in moving cars under conditions similar to those existing at the time the collision occurred. These were offered for the purpose of showing negligence on the part of the employes of the Railroad Company in failing to observe the requirements of these rules at the time the accident occurred. We think, under the authorities, that the testimony was admissible, and if it could have operated to the benefit of the Traction Company in exonerating it from liability for the injuries sustained by the plaintiff it would have been error on the part of the court to refuse its introduction. In the charge of the court the Traction Company's liability was made to depend entirely upon its own negligence in failing to exercise proper care to ascertain whether or not a train was approaching the crossing, and thereby avoid collisions; and the jury was distinctly instructed that unless that company was negligent in that respect to return a verdict in its favor, regardless of whether or not the Railroad Company was guilty of such negligence as proximately

caused the injuries to the plaintiff. We fail to see how such evidence, if admitted, could have operated to the benefit of the Traction Company in the way of showing proper precautions upon the part of its employes or of contradicting facts which pointed to their failure to exercise such precautions. Hubbard City Cotton & Gin Co. v. Nichols, 89 S. W., 795; Gulf, C. & S. F. Ry. v. Galveston, H. & S. A. Ry. Co., 83 Texas, 509; 2 Hutchinson, Carr., sec. 917 (last ed.); Thompson on Negligence, secs. 75-79, 2781.

The St. Louis, San Francisco & Texas Railway Company, the other appellant herein, makes but one assignment of error, and that is based upon the refusal of the court to give the following special charge:

"If you find from the evidence that the motorman and conductor in charge of the street car at the time of the accident were guilty of negligence in not stopping the same near the track and the conductor going forward on to the railway track to ascertain whether or not a train on the railway track was in fact approaching before going on to the crossing with the street car, and if you find that such negligence was the sole proximate cause of the accident, you will find for the defendant, the St. Louis, San Francisco & Texas Ry. Co." In his general charge the court gave the following: "Even though you should, under foregoing instructions, find that the defendant railway company was guilty of negligence, but should further believe from the evidence that the traction company's employes operating said street car, before going on said crossing, failed to exercise that degree of care to discover whether a train was approaching, which the defendant traction company owed to passengers on said car, and which has been defined above, and that such failure of the employes of the traction company was the proximate cause of plaintiff's injury, and that the negligence of defendant railway company, if any, was neither the sole proximate cause nor a concurring proximate cause of plaintiff's injury, then your verdict will be for defendant railway company." In other portions of the court's charge the jury was also instructed as to the conditions under which the Railway Company would not be liable, under any circumstances. The part of this special charge which is probably relied on as not being covered by the general charge of the court, is that portion wherein the attention of the jury is directed to the failure of the employes of the Traction Company to stop the street car near the track of the Railway Company and to go forward on the railway track to ascertain whether or not a train was approaching, and submitting to the jury the issue as to whether or not this failure was negligence. Other preceding portions of the general charge had specially instructed the jury concerning the high degree of care required of the employes of the Traction Company to discover the approach of a train at the crossing, and that a failure to exercise that degree of care and caution would be negligence. The jury had also been fully and accurately instructed as to the conditions under which the Railroad Company would or would not be liable for the injuries to plaintiff. In this special charge the particular facts sought to be grouped and placed before the jury

for their determination are, the failure of the employes of the Traction Company to stop the car near the track and go upon the railroad track for the purpose of ascertaining from that point whether or not a train was approaching the crossing.

It is true that where the general charge of the court fails to make a practical application of the rules of law governing the case to the specific facts relied upon and adduced in evidence, either party has the right to have such omissions cured by special charges prepared and tendered for that purpose. (Missouri, K. & T. Ry. Co. v. McGlamory, 89 Texas, 635; Missouri, K. & T. Ry. Co. v. Rogers, 91 Texas, 58.) But this rule applies only to such facts "as in law constitute a defense," as is said by the Supreme Court in the case first above cited. Here, the fact which the appellant Railway Company had the right to have specially presented to the jury was the failure of the employes of the Traction Company to exercise the proper degree of care, which they should under the circumstances, to discover whether or not a train was approaching the crossing before going upon it. That issue was correctly incorporated and presented in the general charge of the court. The difference between the general charge and the language of the special charge is, that the latter undertakes to have the jury instructed that if they believe the failure of the employes of the Traction Company to stop the car in which they were moving and assume a certain point of observation on the track of the railroad and from there ascertain whether or not a train was coming, such failure might be considered in determining whether or not the employes were guilty of negligence. We do not think the rule invoked by the appellant Railroad Company will justify the giving of such instruction under the facts of this case. There is nothing in the record that tended to show that a full observation of the track of the railroad could not be had from other points of view, or from the platform of the street car. The Railroad Company had the same right to have the court submit in this manner every possible point of view from which the employes might have made their observation, as it did to have this instruction given. When the court instructed the jury as to the duty of the employes of the Traction Company to exercise proper care and caution to ascertain the approach of a train on the railroad track, it covered with sufficient detail that issue in the case and made a sufficient application of the law to the facts. It was for the jury to determine from all the facts whether or not the Traction Company's employes exercised that care, and whether or not such failure, if any, was the sole proximate cause of the collision. It was not essential to a full understanding of the case by the jury that its attention should be called to the different points of observation that the employes might have assumed for the purpose of ascertaining the approach of a train. In fact, such an instruction might have had a tendency to mislead the jury into believing that, in the mind of the court, going upon the track to make their observations was the only proper method of looking for the approach of a train and of exercising the high degree of care imposed upon the Traction Company's employes.

This special charge is further objectionable in assuming as a fact that the street car was not stopped when it got near the crossing. The charge of the court being a correct general presentation of the issue here sought to be called to the attention of the jury, the court was not bound to reform the special charge of the appellant Railway Company, but correctly refused it as presented. (Gulf, C. & S. F. Ry. v. Shieder, 88 Texas, 163.) The testimony was conflicting upon that issue, although there was considerable evidence tending to show that it did stop and that the conductor and motorman made their observations from the front vestibule of the car. It was for the jury to say whether this was true; and if so found, whether it was a sufficient precaution, under the instructions of the court and the circumstances, to discharge the Traction Company from liability for the subsequent damages that resulted.

The judgment is affirmed as to both of the appellants.

*Affirmed.*