PULLMAN CO. v. McGOWAN et al.
(No. 6175.)

(Court of Civil Appeals of Texas. San Antonio. March 12, 1919. Rehearing Denied April 9, 1919.)

1. TRIAL ⬦=83(1)—RECEPTION OF EVIDENCE —HYPOTHETICAL QUESTION—OBJECTION.

An objection to a hypothetical question put to an expert witness that it was "a hypothetical question in which all the facts are not before the witness" *held* too general and indefinite to be sustained, especially where, when the attorney asking the question asked for the facts omitted, none were given, and the same hypothetical questions were asked and like answers returned by other expert witnesses without objection.

2. DEPOSITIONS ⬦=109—MODE OF MAKING— OBJECTIONS.

Objections to interrogatories because they were prefaced by a synopsis of the allegations of the petition and because they were leading were objections going to the form and manner of taking, and therefore could not be considered where they were not made in writing and taken as required by Rev. St. 1911, art. 3676, and called to the attention of the court, but were made in open court during the trial.

3. CARRIERS ⬦=416—SLEEPING CAR COMPANY —INJURY FROM UNHEATED CAR—EVIDENCE— ADMISSIBILITY.

In action against sleeping car company for injury from being transported in an insufficiently heated car, testimony of the defendant's assistant superintendent as to the duty of the defendant's porter to build a fire in the sleeper was properly admitted.

4. APPEAL AND ERROR ⬦=1050(1)—ADMITTING TESTIMONY—SIMILAR TESTIMONY RECEIVED WITHOUT OBJECTION.

Appellant cannot complain of the admission of improper testimony where other witnesses testified to the same fact without objection.

5. CARRIERS ⬦=411—SLEEPING CAR COMPANY —INJURY TO PASSENGER—DEFENSES.

Where sleeping car passenger was aroused by sleeping car employé and compelled to leave the car in which he was sleeping and directed to another car not heated, in which he was refused a berth, and compelled to sit in clothing which had become wet by exposure to rain during the transfer, the sleeping car company was liable therefor, and could not defend by showing that the railway company had told it to make the transfer.

6. CARRIERS ⬦=416—INJURY TO PASSENGER— SUBMITTING LIABILITY OF JOINT TORT-FEASORS TO JURY.

In passenger's action for injuries against sleeping car and railroad companies, the sleeping car company could not complain that the liability of the railway company was not submitted to the jury, so far as the judgment rendered against it in favor of the passenger was concerned; both it and the railway company being joint tort-feasors.

7. CONTRIBUTION ⬦=5—JOINT TORT-FEASORS.

Although railway company ordered that passengers in a sleeping car be transferred to another car, if the sleeping car company compelled a passenger, in making the transfer, to walk through rain and mud, and refused to heat the second coach and to give a berth therein to the passenger, it had no right to demand contribution from the railroad for the passenger's damages from injuries so received; it being the active and direct agent concerned therein.

8. CONTRIBUTION ⬦=5—JOINT TORT-FEASORS.

The doctrine of contribution is never applicable to one who was concerned in committing the tort.

9. CARRIERS ⬦=411—SLEEPING CAR COMPANY —RESPONSIBILITY FOR ACTS OF PORTER.

Where sleeping car company gave orders requiring certain action on the part of its porter, it was liable for such action, although in performing it the porter failed to act with ordinary prudence.

10. CARRIERS ⬦=411—SLEEPING CAR COMPANY—NEGLIGENCE IN TRANSFERRING PASSENGERS.

The duty arising from the relation of carrier and passenger between a sleeping car company and its passenger to use proper care in transferring the passenger from one sleeper to another is not affected by the fact that the company does not control the trains to which its coaches are attached.

11. APPEAL AND ERROR ⬦=742(5) — ASSIGNMENT OF ERROR—STATEMENT.

In action by sleeping car passenger for injuries from being carried in an unheated car, an assignment of error of the company complaining of refusal of instruction that the comfort of passengers who were asleep could not be sacrificed in the interest of those awake by putting on the heat could not be sustained, where, in the statement following the assignment, appellant failed to point out how any such sacrifice would have resulted.

12. NEGLIGENCE ⬦=2 — RULES OF CORPORATIONS.

Rules of corporations cannot justify negligence.

---

⬦=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**13. TRIAL ☞233(1)—INSTRUCTIONS—SUBMITTING TWO ISSUES.**

In action by sleeping car passenger for injuries from being refused a berth in a sleeper to which he was transferred, a charge submitting the issue as to whether a berth was requested by him and refused by the defendant sleeping car company was not objectionable as submitting two issues.

**14. TRIAL ☞261—INSTRUCTIONS REQUESTED EN MASSE.**

Where defendant asked the submission in bulk of 23 issues, on different matters, they were properly refused, when at least a portion thereof had been embodied in the charge of the court, as the court, under such circumstances, was under no obligation to attempt to pass upon the correctness of such a mass of issues.

**15. TRIAL ☞232(2)—INSTRUCTIONS—GENERAL CHARGE.**

A requested general charge requiring a general verdict in a case submitted on special issues is properly refused.

**16. NEGLIGENCE ☞61(1) — "PROXIMATE CAUSE"—CONCURRING CAUSES.**

It is not essential that a cause should act alone in order to constitute it the "proximate cause"; but, if it concurs with another cause in producing the injury, it will be a proximate cause, and one or both of the instruments setting the cause in motion will be liable.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

**17. CARRIERS ☞411—SLEEPING CAR COMPANY — INJURY TO PASSENGER — PROXIMATE CAUSE.**

Notwithstanding the concurrent negligence of another, if a sleeping car company's negligence in causing the transfer of its passenger to another sleeper and in failing to heat the second sleeper or refusing a berth therein produced a condition from which the passenger's tuberculosis developed, the causal connection between such acts and the tuberculosis was unbroken, and the company was liable.

**18. DAMAGES ☞132(1)—EXCESSIVENESS.**

Where sleeping car company compelled its passenger to transfer from one coach to another, exposing him to rain and cold, and then failed to heat the second coach, and denied him a berth therein, from which acts he contracted tuberculosis and was without hope of recovery, a verdict for $30,000 was not excessive, where he was only 46 years old and was incapacitated from work and had been earning $4,000 a year.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Suit by J. A. McGowan against the Pullman Company and others, with cross-action by the named defendant against the San Antonio & Aransas Pass Railway Company. From a judgment for plaintiff in the first action, and for defendant Railway Company in the cross-action, the Pullman Company appeals. Affirmed.

Guinn & McNeill, of San Antonio, for appellant.

Boyle, Ezell & Grover, Ernest Fellbaum, H. C. Carter, Champe G. Carter, Randolph L. Carter, and Perry J. Lewis, all of San Antonio, for appellees.

FLY, C. J. This is a suit for damages, instituted by J. A. McGowan against the Pullman Company, the San Antonio & Aransas Pass Railway Company, and the St. Louis, Brownsville & Mexico Railway Company, in which it was alleged that the first-named railway company operated a line of railroad from San Antonio to Sinton, Tex., and the last-named railway company a line from Sinton to Brownsville; that the three companies were operating sleeping coaches belonging to appellant over the two lines from San Antonio to Brownsville; that on October 26, 1914, McGowan bought a ticket from the San Antonio & Aransas Pass Railway Company from San Antonio to Brownsville, and also secured a ticket for the sleeper between the two points; that he was assigned his berth in the sleeping coach, and was transported to Sinton, and the sleeping coach placed by the initial carrier on transfer track used by the two railway companies, and while there the servants of appellant awakened the pleader and directed him to leave his berth and transfer to another sleeper, which he did by walking through mud and water, exposed to cold, and when he reached the other sleeper no berth was furnished him, and he was compelled to sit the rest of the night in his wet clothing, the car not being heated. He alleged that he had become ill from the exposure, and sustained great and permanent damages. The cause was submitted to a jury on special issues, and upon the answers thereto judgment was rendered in favor of appellee McGowan against appellant for $30,000. Upon the cross-action of appellant against the San Antonio & Aransas Pass Railway Company the verdict was in favor of the latter, and the suit was dismissed by McGowan as against the St. Louis, Brownsville & Mexico Railway Company. This appeal is by the Pullman Company alone.

The facts showed that appellant was negligent in causing McGowan to leave the sleeping coach at Sinton during the night, in bad weather, and walk through mud and water to get another coach, and in not heating the second coach, and in not providing a berth for him in the second coach. That negligence was the direct and proximate cause of illness and a fatal disease from which he will never recover. The jury found that the Aransas Pass Railway Company had not been guilty of negligence causing the injuries to McGowan, and the evidence was sufficient to justify such finding.

The petition was clear and explicit in al-

leging the negligence of appellant and its connection with and relation to the two railway companies, and the first assignment of error, which assails the action of the court in not sustaining the two special exceptions to the petition, is overruled. The petition goes into details and minutia, probably not absolutely required, and it is certainly not open to the charge of vagueness, inconsistency, uncertainty, or a failure to allege any and all facts necessary to show the liability of appellant. The exceptions are so indefinite and uncertain as to come almost, if not quite, within the definition of a general demurrer. They fail to specifically point out the objections to the petition.

There is no merit in the second assignment of error, and it is overruled. If the exception, which it is claimed should have been sustained, was acted upon by the court, the record fails to show it. However, if it had been, it should have been overruled.

The allegations of the petition clearly show that the negligence of appellant was the direct and proximate cause of the sickness of McGowan and the damages resulting therefrom. Appellant compelled him to leave its coach in which he was sleeping and go out into an inclement night and enter another coach in which no arrangements were made for his accommodation or comfort, and sickness was produced by such negligence from which he will never recover. The third, fourth, and fifth assignments are overruled.

[1] The following question was asked Dr. Wolf, a physician who had treated McGowan:

"Doctor, from your treatment of him, from all you saw of the case, saw of Mr. McGowan, and adding to that the hypothesis that I put to you, that in the latter days of October he was subjected to an exposure while on a trip to Brownsville, in which he was required to get out of his berth in a warm sleeping car, out into the cold, cool, damp air; that it was wet and damp; that he got his feet both muddy and wet, and then sat in a cold car afterwards for several hours in a thoroughly chilled condition, and then contracted this cold and this grippe, in which you saw him in the early days of November—with the history of that exposure, and then the cold and grippe, as you first saw him, and the history of the case subsequently, as you know it, what would you say in your opinion was the origin of the tuberculosis?"

To that question before answered was added:

"That, when taking this trip to Brownsville, he was in good health, was a strong, robust man; then he sustained that exposure, as I outlined in this same question, returned to San Antonio, and was in the condition that you saw him in November, when he had the bad cold and bronchitis—upon that hypothesis, what would you say; where did the tuberculosis have its origin?"

The objection urged to the question was:

"Because it is a hypothetical question in which all the facts are not before the witness, and, on account of the great uncertainty that attends an opinion of that kind, we do not think that such an opinion is competent testimony, and we object to it for those reasons."

It will be noted that the objection is very general and indefinite, and when the attorney for McGowan asked for the facts omitted, none were given, although counsel attempted to answer the question. The objections are too general and indefinite to be sustained. The question objected to was put as a hypothesis or an opinion based upon proven facts, and was properly presented, and the answer of the witness thereto was unobjectionable. Expert testimony is elicited by hypothetical questions and is the opinion of the expert based upon certain facts stated in the question or heard by the expert from other witnesses. Dr. Wolf clearly qualified himself as an expert. The matter is thus clearly presented by Chief Justice Shaw in Dickenson v. Fitchburg, 13 Gray (Mass.) 546:

"In order to obtain the opinion of a witness on matters not depending upon general knowledge, but on facts not testified of by himself, one of two modes is pursued, either the witness is present and hears all the testimony, or the testimony is summed up in the question put to him; and in either case the question is put to him hypothetically, whether, if certain facts testified of are true, he can form an opinion, and what that opinion is."

Rogers on Expert Testimony, p. 65, states:

"Counsel, in framing the hypothetical question, may base it upon the hypothesis of the truth of all the evidence, or on an hypothesis especially framed on certain facts assumed to be proved for the purpose of the inquiry. The question is not improper simply because it includes only a part of the facts in evidence."

The same questions were asked and like answers returned by other medical experts without objection. The sixth assignment of error is overruled.

[2] The seventh assignment of error objects to interrogatories to J. S. Bowles, Albert Brown, and Mrs. Albert Brown, because they were prefaced by a synopsis of the allegations in the petition. The preamble did not tend to lead the witnesses, but merely informed them of the allegations of the petition. The objections went to the form and manner of taking, and were not in writing, taken as required by statute, and called to the attention of the court. The objection was made in open court during the trial. The objection was that the questions were leading, and it is settled that such objections go to the manner and form of taking. Rev. St. art. 3676; Gill v. Bank, 61 S. W. 146; Hugo v. Hirsch, 63 S. W. 163; Pottery Co. v. Black, 149 S. W. 735.

[3, 4] The eighth assignment of error assails the action of the court in permitting Hoffman, appellant's assistant superintendent, to testify that it was the duty of appellant's porter to build a fire in the Pullman sleeper when standing on a transfer track, and striking out additional matters stated by the witness as to the effect that it was the duty of the railway company to see that the car was kept comfortable. Of course, McGowan had no interest in what the duty of the railway company may have been, and it could not affect him. The testimony as to the duty was proper, coming as it did from appellant's officer, but, if it had been improper, appellant could not complain because the Pullman conductor and porter testified without objection to the same fact as to the duty of the porter.

The objection to certain testimony presented by the ninth assignment is one that has no bearing upon the case of appellant, but relates to appellant and the railway company, and it is overruled. As will hereinafter appear, it is of no importance as between appellant and the San Antonio & Aransas Pass Railway Company on the question of contribution.

The statement following the tenth assignment fails to disclose the testimony to which objection was urged, and there is no bill of exceptions in the record addressed to Isaacs' testimony as to whose duty it was to build fires in the Pullman coach. Other testimony tending to show that it was the duty of the porter to build the fires was offered without objection, and consequently the evidence of J. A. Davis on the same subject could not have injured appellant. Davis was the superintendent of appellant, and he ought to know whether the porter should build fires in the sleeping coaches, and ought to be permitted to testify to it.

The eleventh assignment of error raises a question which does not concern McGowan, but arises between the railway company and the appellant. It may be stated, however, that the superintendents of the companies were more competent to testify as to the practice and customs existing between the companies than any one else. There was nothing in writing to show those things, and we think the evidence was permissible. The assignment is overruled.

The bill of exceptions referred to by appellant does not sustain the twelfth assignment of error, which objects to Dimaline's evidence as being an opinion and a conclusion of the witness. The bill of exception shows that the witness was asked if under certain circumstances the Pullman Company exercised control over its cars. The assignment complains of a question being asked as to what would occur if the Pullman Company requested the handling of cars. The assignment does not bear upon the claim of McGowan, but is a matter purely between the two companies, all of which objections will be disposed of hereinafter in disposing of the matter of contribution between the companies. The negligence of appellant was shown beyond the peradventure of doubt, which negligence was the proximate cause of the damages sustained by McGowan. In the motion for new trial no claim was made that the evidence did not fully sustain the issues submitted to the jury, which fixed the culpability and liability of appellant.

[5] It is no concern of appellant's that no issue as to the liability of the San Antonio & Aransas Pass Railway Company was submitted unless the doctrine of contribution prevailed between them, and in that event errors occurring as between the two companies could not affect the right of McGowan to recover from one or both of them. The special issues submitted by the court which are complained of in the fourteenth, fifteenth, and sixteenth assignments of error were called for by the evidence, which showed without contradiction that appellant, against the will of the plaintiff and over his protest, required him to transfer from the car Salona to the car Pavia, through cold, mud, and water. Appellant was guilty of the wrongs enumerated, and it could be of no importance, so far as the plaintiff was concerned, how it was brought about. No matter who was back of appellant in causing its action, it was guilty, and could not hide itself behind the culpability of another. The record fails to disclose any reluctance upon the part of the appellant to cause the transfer, to refuse a berth, and neglect to build a fire. These things were all done by appellant, and it is no defense to say that another company had told it to commit the wrongs. Pullman Co. v. Hocker, 41 Tex. Civ. App. 607, 93 S. W. 1009. The passenger was aroused and compelled to leave the car in which he was sleeping by an employé of appellant. He was directed to another car which was not heated, and refused a berth by an employé of appellant, and was compelled to sit in the second car in wet clothing by an employé of appellant. The Hocker Case is directly in point, and was approved by the Supreme Court.

[6] The seventeenth, eighteenth, nineteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, and twenty-ninth assignments of error are complaints that the liability of the San Antonio & Aransas Pass Railway Company to appellant was not submitted to the jury. As hereinbefore stated, that cannot affect the judgment obtained by McGowan against appellant. McGowan has not complained that he did not recover judgment against the railway company. He is satisfied with his judgment, and any differences appellant may have with its joint tort-feasor will not be allowed to interfere with the rights of McGowan.

The case of San Antonio Gas Co. v. Singleton, 24 Tex. Civ. App. 341, 59 S. W. 920, is cited by appellant to sustain its contention that the failure to submit the liability of the railway company to the jury was error of which it can complain. The Singleton Case was decided by this court, and it was held that the appellant and the city of San Antonio were joint tort-feasors, and it was said:

"The right to a judgment against both parties was one that belonged to appellee, and she does not complain because the city of San Antonio was not found jointly liable; and it does not appear in what manner appellant is injured by a failure to find against both parties, as, under the facts, appellant would be bound to indemnify the city for the damage. * * * Each of the defendants was separately and individually liable to appellee for the damages, and appellee could, at least under the circumstances of this case, take a judgment against one or both of the tort-feasors."

In that case it was held that the city was entitled to contribution, because it was not an active agent in producing the injury and knew nothing of the existence of the trench dug by the gas company into which the appellee fell. The facts in this case make a different showing. If both of the companies are guilty of negligence, appellant was the active party in producing the injuries received by McGowan.

Again, in the case of Moore v. Kopplin, 135 S. W. 1038, which is cited by appellant, and which was decided by this court, appellee was struck by an obstruction in the streets of San Antonio, three parties were defendants, and it was held:

"As to joint tort-feasors, the rule is that each is liable for the whole of the damages, though they are jointly, as well as severally, liable. In negligence, as well as in trespass, if two persons concur in doing the negligent act, they may be sued jointly, and they are jointly and separately liable for the whole of the damages. As there can be no contribution between joint tort-feasors even where there is a judgment against both and the whole of the damages is collected from one, it is not a subject of complaint that 'one was taken and the other left.' "

Again this court said:

"Where there is no moral turpitude involved in an act of negligence, and it is not against the policy of the law to inquire into the relative delinquency of the parties, although both are wrongdoers so far as the injured party is concerned, the law may adjust the matter as between the tort-feasors so as to compel the real guilty party to bear the burdens arising from his active negligence; that of his codefendant being merely passive, involving no moral turpitude."

[7] Let it be admitted that the railway company ordered the coach to be put where it was; that it ordered that the passengers be transferred from one coach to another.

It did not prevent the two cars from being placed close to each other; it did not compel the passengers to walk through rain and mud and water; did not refuse to heat the second coach; and it did not refuse a berth to McGowan. Both may have been guilty of negligence, but certainly appellant was not a passive, but an active, agent in bringing about the injuries to the passenger. Certainly appellant had no right to demand contribution from the other tort-feasor; it being the active and direct agent concerned in the negligence which culminated in the injuries to McGowan.

The general rule as to contribution is thus stated by Judge Cooley in his work on Torts, p. 254:

"The general rule may be found in the maxim that no man can make his own misconduct the ground for an action in his favor. If he suffers because of his own wrongdoing, the law will not relieve him. The law cannot recognize equities as springing from a wrong in favor of one concerned in committing it."

There are, it is true, exceptions to the rule which are named by Judge Cooley as follows:

"They are of cases where, although the law holds all the parties liable as wrongdoers to the injured party, yet as between themselves some of them may not be wrongdoers at all, and their equity to require the others to respond for all the damages may be complete. There are many such cases where the wrongs are unintentional, or where the party, by reason of some relation, is made chargeable with the conduct of others."

Illustrative of the relation mentioned is that, where a servant is guilty of negligence which is imputed to the master, the latter might recover from the servant.

[8] The doctrine of contribution is never applicable, however, to one who was concerned in committing the tort. Railway v. Railways, 83 Tex. 509, 18 S. W. 956; Frankenthal v. Lingo, 16 Tex. Civ. App. 232, 40 S. W. 815; Corsicana v. Tobin, 23 Tex. Civ. App. 498, 57 S. W. 319; Railway v. Black, 49 Tex. Civ. App. 390, 109 S. W. 410. The doctrine is as old as systematized law, and is embodied in the old Latin maxim: "In pari delicto potior est conditio defendentis."

In the case of Kampmann v. Rothwell, 101 Tex. 535, 109 S. W. 1089, 17 L. R. A. (N. S.) 758, it was held that appellees were liable to appellant for contribution because appellant was not an active agent in the tort, while appellees were, which is in thorough accord with the rule propounded by Cooley and now being followed by this court. To the same effect are Railway v. Wiggins, 48 Tex. Civ. App. 449, 107 S. W. 899; San Antonio v. Smith, 94 Tex. 266, 59 S. W. 1109; Railway v. Nass, 94 Tex. 255, 59 S. W. 870, and same case by this court, 57 S. W. 910.

[9] The porter was acting under the orders of appellant, and while he might under

the circumstances have acted as any other person of ordinary prudence who was an employé of a corporation would have acted under like circumstances, still, appellant having given the orders that required the action on the part of the porter, it would be liable, and the special issue copied into the thirtieth assignment of error was properly refused. The porter may have acted prudently in carrying out his orders, but appellant was negligent in giving such orders, and such negligence was followed by other negligence in causing McGowan to ride in a cold car and in refusing him a berth. The court presented the issue clearly as follows:

"Did the defendant the Pullman Company, by its employés, against the will of plaintiff and over his protest, require him to transfer from the car Salona to the car Pavia, through cold, mud, and water?"

[10] The charge the refusal of which is complained of in the thirty-first assignment of error sought to inform the jury that appellant was not liable for its negligence in transferring passengers from one of its cars to another, and was properly refused. It did not embody the law and was a palpable invasion of the province of the jury. The law does not license the Pullman Company to commit acts of negligence and disregard the rights of its passengers because it does not control the trains to which its coaches are attached. The courts of Texas have never subscribed to any such theory. Pullman v. Pollock, 69 Tex. 120, 5 S. W. 814, 5 Am. St. Rep. 31; Pullman v. Matthews, 74 Tex. 654, 12 S. W. 744, 15 Am. St. Rep. 873; Pullman v. Smith, 79 Tex. 468, 14 S. W. 993, 13 L. R. A. 215, 23 Am. St. Rep. 356. The relation of passenger and carrier existed between appellant and McGowan, and the former owed the latter the duty arising from that relation. Railway v. Packard, 193 S. W. 397.

The charge whose rejection is assailed in the thirty-second assignment of error was in effect a request for a peremptory finding in favor of appellant, which, under the facts, could not be for a moment considered. The assignment is overruled.

The thirty-third assignment has been disposed of in the consideration of other assignments, and it is overruled. The court fully and fairly presented every issue bearing on the case to the jury, and their findings were sustained by the facts.

The thirty-fourth assignment of error assumed facts that did not exist. To have required the jury to have answered in the negative to the issue, as appellant desired, would have been a gross invasion of the domain of the jury, and directly in the face of the facts, which showed that appellant alone was responsible for the condition of the car, Pavia, into which McGowan was transferred, being cold, damp, and unheat-

ed. No effort was put forth to make the passengers comfortable, although fire could have been kindled or heat turned on with little or no trouble.

[11, 12] Appellant sought to have the jury instructed that the comfort of the passengers who were asleep could not be sacrificed in the interest of those awake by putting on the heat. If any such sacrifice would have resulted, appellant fails to point it out in its statement following the thirty-fifth assignment of error, which causes the assignment to be a mere abstraction, and it is overruled. In this connection it may be said rules of corporations cannot justify negligence.

[13] The charge complained of in the thirty-sixth assignment of error submitted the issue as to whether a berth was requested by McGowan and refused by appellant, and is not subject to attack for submitting two issues. The assignment is without merit and is overruled.

[14] Appellant asked the submission in bulk of 23 issues, on different matters, and complains in the thirty-seventh assignment of error that the court refused them. A number of the issues were clearly inappropriate and incorrect, and the court was under no obligation, even if they had been proper, to attempt to pass upon the correctness of such a mass of issues, when at least a portion of the mass had been embodied in the charge of the court. As said by our lamented Associate Justice Swearingen, for this court, in Ice Co. v. Scott, 186 S. W. 418:

"It is a well-settled rule that instructions requested en masse should be refused by the trial court if any one of them has been substantially given by the court in its main charge, or if any one of those requested en masse should have been refused."

To the same effect is Messimer v. Echols, 194 S. W. 1171, by the Court of Civil Appeals of Texarkana. The thirty-seventh assignment of error is overruled.

[15-17] The charge rejection of which is assailed in the thirty-eighth assignment of error not only did not embody the law, in that it not only ignored the doctrine of concurring causes of the injury, but sought to destroy it, and it should not have been given even if it had embodied the law because it was a general charge requiring a general verdict in a case submitted on special issues.

"It is not essential that a cause should act alone in order to constitute it the proximate cause; but, if it concurs with another cause in producing the result, it will be a proximate cause, and one or both of the instruments setting the cause in motion will be liable for the damages arising therefrom. * * * One tortfeasor cannot be allowed to excuse his negligence by the plea that his negligence would not have produced the result if another tort-feasor had not also been negligent. Each will be responsible for the results of his negligence."

Railway v. Volrath, 40 Tex. Civ. App. 46, 89 S. W. 279.

The quoted language applies with peculiar force to this case. If the act of negligence in causing the transfer or the act in furnishing a cold car or refusing a berth produced bronchitis, severe cold, and grippe, and from those diseases tuberculosis resulted, the causal connection between the acts of negligence and the tuberculosis was unbroken, and appellant is liable. It would have been error to have instructed the jury that the failure to furnish the berth must have been the primary cause of the tuberculosis. If such act concurred with the other causes in producing the consumption, that was sufficient. The thirty-ninth assignment of error is overruled.

[18] The fortieth assignment of error complains of a refusal to give a peremptory instruction in favor of appellant, and is fully met by our conclusions of fact. The evidence presents a clear and flagrant case of negligence for which appellant should be held liable. No reasonable excuse is offered for forcing a passenger from his berth in a coach out into rain, cold, and mud, and then compelling him to ride in a cold coach, and denying him the use of a berth. A man strong and in excellent health, by the exposure forced upon him by appellant, lost his health and contracted a disease from which there can be no reasonable hope of recovery. He was only 46 years of age, in the vigor of mature manhood, and he has been permanently robbed of health, vigor, and happiness by the negligence of appellant. He is one of those most pitiable and miserable men, a consumptive in the last stages. If appellant, by its negligence, brought McGowan to his present state, the verdict for $30,000 is not excessive. The evidence showed that McGowan at the time of his injury was earning over $4,000 a year, and he is now incapacitated for any work.

As a further evidence of the negligence of appellant, it may be stated that the coach Salona, from which the passengers from San Antonio had been emptied by the porter, was then attached to the car Pavia, into which the passengers had been directed, and carried empty as far as Robstown, and then, on account of a washout, detoured to Corpus Christi. The negro porter called it "mistake in orders," but the jury rightly named it gross and inexcusable negligence. Appellant makes no attempt to excuse it, and offers no extenuation for its conduct except that it was acting under orders from another corporation, with whom it desires to share the damages. If it has any proper grounds for it, indemnity in a separate suit may be sought by it from its partner in negligence and a total disregard for the comfort and health of its passengers, but it cannot complain in this case that it has been forced to answer for its failure to perform its duty to the traveling public. It is a carrier of passengers, both by law and under the terms of its contract with the railway companies. Not only was it receiving the fare for berths and seats, but two cents a mile for every mile it allowed the railway company to transport its cars. It at least owed to its passengers ordinary care, which was all that was demanded of it by the instructions. We are not prepared to hold that it did not owe to its passengers a much higher degree of care than ordinary care.

This court has leniently and indulgently considered a number of assignments not presented according to the rules, and finds no error justifying a reversal. The cross-assignments need not be considered, as they are presented only in case there had been a reversal of the judgment.

The judgment is affirmed.