CURETON, C. J. The opinion of the Commission of Appeals, answering certified questions, adopted, and ordered certified to the Court of Civil Appeals.

---

### BARTHOLOMEW v. SHIPE.
### (No. 438–3816.)

(Commission of Appeals of Texas, Section A. May 30, 1923.)

**1. Nuisance ⊙⟳30—All landowners proper parties defendant.**

In suit to abate nuisance of stagnant water in a gravel pit, notwithstanding allegations describing in a general way portions of the pit separately owned by defendants, where the controversy was over the condition in which the pit was maintained as a whole, all parties having an interest therein, or whose acts contributed in creating and maintaining it, were properly parties defendant.

**2. Nuisance ⊙⟳35—Court acquiring jurisdiction to abate nuisance may decree contribution between defendants.**

In suit for mandatory injunction to abate a nuisance of stagnant water in a gravel pit, maintained by defendants on their individual premises, the court having acquired jurisdiction to abate the nuisance could properly adjust all differences between the parties to the extent of adjudging who was the real wrongdoer, if all were not culpable, and decree contribution between those required to incur expenses and cost for benefit of all in abating the nuisance.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action to abate a nuisance by E. F. Fields against E. C. Bartholomew and others, in which defendant named filed plea of reconvention. Judgment for defendant named against defendant M. M. Shipe was reversed by the Court of Civil Appeals (239 S. W. 1020), and defendant named brings error. Reversed, and remanded to the Court of Civil Appeals.

D. H. Doom, of Austin, for plaintiff in error.

White, Cartledge & Wilcox, of Austin, for defendant in error.

GERMAN, J. On April 8, 1915, E. F. Fields and others filed petition in the district court of Travis county against E. C. Bartholomew, M. M. Shipe, and Patrick Gaffney, to abate a nuisance alleged to be caused by noxious and stagnant waters being permitted to stand in a gravel pit located on a 10-acre block of land in the city of Austin. It was alleged that Shipe owned all of said gravel pit, except 150 by 200 feet out of the north end owned by Bartholomew and 150 by 257 feet out of the southwest corner owned by Gaffney. The first action taken by the court was based on plaintiffs' second amended original petition, filed May 25, 1915. This petition, after setting out the facts' above mentioned, alleged that during the preceding two years the defendants had removed large quantities of gravel from said pit, leaving deep holes therein, and as a result water had accumulated on the parts of said pit owned by Bartholomew and Gaffney and had become stagnant, filthy, etc. Then follows this allegation:

"Plaintiffs further allege that since the filing of the original petition and the first amended petition herein, the heavy rains of April 22d and 23d of this year have completely filled all of said gravel pit owned by defendants with water; that same has become stagnant and filthy and emits foul and offensive odors; that said stagnant and filthy water in said gravel pit is a menace to the health and comfort of plaintiffs; that if the water· is permitted to exist in its present condition in said gravel pit it will thereby imperil the health and comfort of plaintiffs in the free enjoyment of their homes, and will cause irreparable injury to plaintiffs' property, unless these defendants are forced and compelled to drain said gravel pit so that surface water will not accumulate and remain thereon."

As a further necessity for a· temporary mandatory injunction, plaintiffs alleged:

"That said gravel pit is now filled with surface water; that same is stagnant and filthy; that same is a public nuisance and is a menace to the health and comfort of plaintiffs in the free enjoyment of their homes and their property; that the hot summer months are here; that the water in said gravel pit will remain for several months unless same is drained; that the effect of the hot weather upon the large body of water in said gravel pit will cause odor therefrom to become more offensive and foul; that it will imperil the health of plaintiffs and produce sickness and disease, unless said gravel pit is drained at once and unless defendants are forced and compelled to drain same at once or to have it so adjusted that the surface water will not remain therein in its present condition."

The prayer was for a temporary writ, "requiring and compelling defendants to relieve said gravel pit of surface water instanter; that upon final hearing said temporary mandamus be made perpetual; that the court issue a decree declaring said gravel pit to be a nuisance; and that said gravel pit be properly and adequately drained, so that surface water will not accumulate and stand thereon."

Defendant Bartholomew answered with several exceptions, and denial that the condition of the gravel pit constituted a nuisance; and specially alleged that he only owned a small part of said pit and his ownership therein was subject to the right of Shipe to remove gravel therefrom, and he had no right or authority to stop the removal of gravel or to enter thereon and drain the same. This answer was filed expressly for the purpose of answering plaintiffs' demand for a temporary injunction, and this defendant did not waive his rights to have the cause determined on its merits at a regular term of the court.

June 4, 1915, the prayer for a temporary writ of injunction was heard and considered by the court, and the court made the following finding:

"The court finds that a large portion of the property belonging to the defendants herein, which property is described and set out in plaintiffs' petition, is now covered by stagnant water, and that if said water is permitted to remain without further attention on the part of the defendants it will soon become a breeding place for mosquitoes and other insects, and that the presence of said water will be and is detrimental to the comfort and health of the plaintiffs herein."

The court thereupon entered its order directing the clerk to—

"issue writs of injunction as prayed for by plaintiffs, commanding the defendants and each of them, pending the final trial of this cause, to drain or otherwise remove from the premises owned and controlled by said defendants, respectively, all stagnant water standing thereon."

It appears that in obedience to said order Bartholomew opened proper facilities for draining the pit at the place where he owned the land; that this portion of the pit was lower than other portions, and when the same was drained it resulted in draining the water from the whole pit, and the condition complained of was relieved. In doing this work Bartholomew incurred an expense

of $300; and he also paid costs amounting to $39.

September 20, 1915, Bartholomew filed his answer on the merits, denying that the conditions complained of by plaintiffs constituted a nuisance, and setting out the facts with reference to the ownership and rights of himself and Shipe in the gravel pit. He denied being in any manner responsible for the existing conditions of the gravel pit, and alleged that, if a nuisance in fact existed, it was due solely to acts and omissions of defendant Shipe. He prayed that upon final hearing, if it be found that the temporary writ of injunction was not properly granted, then he have judgment against plaintiffs and their sureties for the expenses and costs incurred by him in draining said gravel pit; but if it be found that the writ was properly issued, then he have judgment against defendant Shipe for the expenses and costs incurred by him. Shipe, by his answer, put in issue the matters in dispute between him and Bartholomew.

Final hearing was had March 11, 1921. At this time the trial court found that the temporary writ was properly issued; that in compliance therewith Bartholomew had drained the gravel pit, and the nuisance had been abated; that he incurred in connection therewith an expense of $300; that defendant Shipe was solely responsible for the existence and maintenance of the nuisance, and that the acts of Bartholomew in no way contributed thereto; that therefore Bartholomew was entitled to be reimbursed by Shipe for all expenses and costs incurred by him. Judgment was entered accordingly. On appeal the Court of Civil Appeals at San Antonio reversed and dismissed the case, holding that the suit was not one to abate a joint nuisance, and Bartholomew's cause of action against Shipe, having arisen after the nuisance was abated, was a separate cause of action from the original suit, and, being an action to recover only the sum of $339, the district court had no jurisdiction. 239 S. W. 1020.

This was not an action by plaintiffs for damages against joint tort-feasors, as in the case of Sun Co. v. Wyatt, 48 Tex. Civ. App. 349, 107 S. W. 934, cited by the Court of Civil Appeals. The only purpose of the suit was to abate a nuisance. Neither is this a case (as established by the pleadings and the findings of the trial court) where one joint tort-feasor, who has himself been guilty of wrongdoing, is seeking contribution from another joint tort-feasor, as illustrated in the case of Pullman Co. v. McGowan (Tex. Civ. App.) 210 S. W. 846, cited by the Court of Civil Appeals. This case (as disclosed by the pleadings and the findings of the trial court) comes directly under the exception recognized in the case of San Antonio v. Smith, 94 Tex. 266, 59 S. W.

1109. But this is a matter with which we are not directly concerned, except by way of making a clear and accurate statement of the case.

[1] The whole controversy on the question of jurisdiction seems to rest upon the one contention as to whether the pleadings constituted one action against the three defendants to abate a joint nuisance, or constituted in effect three separate actions to abate three separate nuisances, maintained by defendants separately upon their individual premises. It seems to us the pleadings are so plain and unambiguous as to require no construction. The whole controversy was over "the gravel pit," and the condition in which it was maintained as a whole. The contention being that the gravel pit as a whole constituted the nuisance, then all parties having an interest in the property, or whose acts apparently contributed in creating and maintaining the same, were properly parties defendant in an action to abate same. It is true plaintiffs described in a general way the portions of the gravel pit owned by the defendants, and in a preliminary statement alleged that water was allowed to stand on the portions owned by Bartholomew and Gaffney; but in alleging the specific matters relied upon as constituting the nuisance, they say:

"The heavy rains of April 22d and 23d of this year have completely filled all of said gravel pit owned by defendants with water; the same has become stagnant and filthy and emits foul and offensive odors."

And in stating grounds for the temporary writ they allege:

"That said gravel pit is now filled with surface water; the same is stagnant and filthy; the same is a public nuisance," etc.

In the order for the temporary writ, among other things, the court finds:

"That a large portion of the property belonging to the defendants herein, which is described and set out in plaintiffs' petition, is now covered by stagnant water."

In addition, the final judgment in the case, among other things, recites:

"That said gravel pit became a nuisance while the same was under the control and management of the said defendant M. M. Shipe, and the said defendant E. C. Bartholomew nowise contributed thereto and is nowise liable for the nuisance created upon said property."

[2] Under the pleadings and the findings of the trial court this was a proceeding to abate one nuisance, and not three separate actions joined in one proceeding to abate three separate nuisances, maintained by the three defendants upon their separate property. Being an equitable proceeding, the court, having acquired jurisdiction for the purpose of abating the nuisance, could prop-

'erly adjust all differences between the parties, to the extent of adjudging who was the real wrongdoer, if all were not culpable, and decreeing an equitable contribution between those who had been required to incur expenses and costs for the benefit of all in abating the nuisance. 20 Ruling Case Law, p. 483, lays down the general rule as follows:

"According to a settled principle, a court of equity, acquiring jurisdiction for the purpose of abating a nuisance, will also, upon proper averments, extend such jurisdiction to the ascertainment and determination of the damages suffered by reason of the nuisance. Having assumed jurisdiction to grant relief in such a case, the chancery court will retain the bill and proceed to do complete justice between the parties, without remitting them to a court of law for an adjustment of damages, to which the complainant may be entitled by reason of the creation and maintenance of the nuisance. Furthermore, where a court of equity has acquired jurisdiction of an action to enjoin a nuisance and for damages, the fact that the nuisance has been abated voluntarily since the bringing of the action and that it is not likely to be renewed are held not to deprive the court of jurisdiction to retain the cause to award damages for the injury already done."

If the court has a right to retain jurisdiction and award damages, certainly the court, in such case, could adjust the equities between the defendants in such way as to relieve one from the penalty of damages who was innocent of wrongdoing and whose acts in no manner contributed to cause the wrong or damages. San Antonio v. Smith, 94 Tex. 266, 59 S. W. 1109. Expenses necessarily incurred in carrying out the orders of the court should, we think, be regarded in the same way as damages adjudged against the defendants jointly.

In Smith v. Wilson, 18 Tex. Civ. App. 24, 44 S. W. 556, injunction was granted by the district court on application of plaintiff. The defendant filed a plea in reconvention, seeking to recover $300 on the injunction bond. Plaintiff dismissed his action, and it was held:

"Where the court has jurisdiction of the suit in which the injunction is issued, it has jurisdiction of a plea in reconvention in the same suit, notwithstanding it would not have jurisdiction of the amount otherwise."

In the present case plaintiff in error Bartholomew filed his plea in reconvention in proper time against the plaintiffs in the court below, and in the alternative prayed that if the plaintiffs themselves were not liable for the amount paid by him, he was entitled to contribution from his codefendant Shipe. The injunction was never dismissed, but on final hearing it was determined that the same was properly granted, and that no further necessity existed for its continu-

ance. Retaining its jurisdiction to enter final order in the jurisdiction proceeding, and the cross-action being a part of the same proceeding, the court had full jurisdiction to dispose of all the questions at issue between all the parties.

We recommend that the judgment of the Court of Civil Appeals be reversed, and the cause remanded to that court, for a consideration of the case upon the questions presented by the appeal.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and cause remanded to that court, for further proceedings therein recommended by the Commission of Appeals.