### GOLDSMITH & POWELL et al. v. STATE.
#### No. 13157.

Court of Civil Appeals of Texas. Dallas.
Jan. 23, 1942.

Rehearing Denied Feb. 20, 1942.

M. H. Barton, of Overton, for appellants.

Gerald C. Mann, Atty. Gen., and Richard H. Cocke and George W. Barcus, Asst. Attys. Gen., for appellee.

BOND, Chief Justice.

This suit was instituted by the State of Texas, through its Attorney General, Gerald C. Mann, against one hundred and fifty-five separate defendants, to enjoin them from polluting the waters of the Neches River. It is alleged that the defendants are the owners of oil wells along the watershed of the river, and are permitting salt water to flow from their respective wells into the river, thus polluting it, destroying fish and vegetation, and rendering the water unfit for domestic purposes by individuals, and by the public generally.

The cause went to trial before a jury, as to ten of the defendants only, and, on specific finding that the Neches River was polluted by salt water, or chlorides, rendering the water injurious to fish and other aquatic life, unfit for agricultural, domestic and industrial use, and that each of said defendants was permitting salt water, or chlorides, to escape into the river and its tributaries, thus contributing to its polluted condition, judgment was entered perpetually enjoining each defendant from allowing salt water and other deleterious substances to flow from his tanks, pits, reservoirs, ditches, or other receptacles on his premises, into the Neches River or any of its tributaries. Only five of the ten defendants enjoined have appealed, namely: Goldsmith & Powell, H. W. Donnell, W. H. McMurray, McMurray Corporation, and the Overton Refining Company.

The primary questions involved in this appeal are: The rights of the State to maintain the suit, and the sufficiency of the evidence to sustain the findings of the jury, that appellants are contributing to the noxious condition of the waters of Neches River and its tributaries.

The waters of all natural streams of this State and of all fish and other aquatic life contained in fresh water rivers, creeks, streams and lakes, or sloughs subject to overflow from rivers or other streams within the borders of this State, are declared to be the property of the State; and the Game, Fish and Oyster Commissioner has jurisdiction over and control of such rivers and aquatic life. Arts. 4026 and 7467 R.C.S. The ownership is in trust for the people (Hoefs v. Short, 114

Tex. 501, 273 S.W. 785, 40 A.L.R. 833); and pollution of streams and water courses is condemned by both the civil statutes. Art. 4444 and Vernon's Annotated Penal Code Arts. 697, 698 and Art. 698a. The Constitution of Texas, Art. 16, § 59a, Vernon's Ann.St., designates rivers and streams as natural resources, declares that such belong to the State, and expressly invests the Legislature with the preservation and conservation of such resources. The fact that the Legislature has provided punishment, by fine and imprisonment, for pollution of water courses, Art. 4444, R. C.S., and Art. 697 et seq. P.C., does not affect the power of the State to seek injunctive remedy when the provisions of law are inadequate to effect the purposes intended; nor is a conviction on a criminal charge a prerequisite to the issuance of an injunction (Cardwell v. Austin, Tex. Civ.App., 168 S.W. 385); nor is the district court deprived of jurisdiction to enjoin a public nuisance, where such nuisance is an injury to the property or civil rights of the public at large. 31 Tex.Jur. 450, § 37. Pollution of a public water course is a public nuisance (State v. Patterson, 14 Tex. Civ.App. 465, 37 S.W. 478; City of Corsicana v. King, Tex.Civ.App., 3 S.W.2d 857); and while the pollution of water courses in this State is expressly condemned by statute, yet, being a public nuisance, the right to abate such nuisance is lodged in the district courts, independent of any statute; and, where several persons contribute to the creation of such nuisance, they may be joined in a common action, an action in equity for injunction, against the defendants whose separate and individual acts resulted in the same general consequence of wrong. Sun Oil Co. v. Robicheaux, Tex.Com.App., 23 S.W.2d 713; Bartholomew v. Shipe, Tex.Com.App., 251 S.W. 1031.

In this case there has been a definite showing that a high degree of saline pollution has been attained in the waters of Neches River, that all aquatic life is extinct in the river, that near and adjacent lands are unfit for agricultural pursuits, individual enterprises and animal life; and that there is a definite threat that the present condition will become worse as the production of salt water increases in the East Texas field. It is evident that as the oil reserve in the field is depleted, the production of salt water will increase, finally resulting in 90 or 100% salt water. There

536

are approximately 4,336 wells in the East Texas field producing salt water, and about 1,445 of these are located on the watershed of the Neches River and its tributaries. Appellants own a large number of these wells, many producing salt water, and the water therefrom is allowed to flow into earthen pits, seep into the ground and out onto the surrounding lands, to be washed by rainfall into the Neches River and its tributaries, thus contributing to the salinity of the water of the river and its injurious effect. The evidence is not clear as to how much of the salt water from appellants' wells seeps into the river, but it is evident that the manner of storing the salt water in earthen pits and the condition of the land about the pits and wells are calculated to, and evidently did, contribute to the pollution of the river, and this will continue unless abated. The evidence is abundant, we think, to support the jury's findings that the wells, in their total combination, are polluting the waters, and that considerable quantity of salt water from appellants' wells had, in conjunction with other salt water, aided in the pollution, and that appellants' means of taking care of the salt water in earthen pits threatens further pollution of the public water course. There is no evidence that the defendants intend to do more in caring for the salt water produced from their wells than they have been doing in the past, thus injury to the State's property is imminent and should be prevented by injunction.

There are many trial errors assigned which we have considered and, finding no reversible error, they are overruled.

The judgment of the court below is affirmed.