CITY OF CORSICANA v. L. D. TOBIN ET AL.

Decided April 28, 1900.

1. **Practice—Evidence Not in Rebuttal—Harmless Error.**

In an action by plaintiff against a city for personal injuries to himself and wife resulting from an unguarded ditch in the street, it is not ground for reversal that the trial court permitted the wife to testify, in rebuttal, as to the nature and extent of her injuries, when the city had introduced no evidence on that issue,—her evidence being merely corroborative of that already given by the husband, and it not appearing that the city was surprised or improperly injured thereby.

2. **Charge of Court.**

Where, in the main charge, the court has instructed that plaintiff must prove the facts making out his case by a preponderance of evidence, there is no error in refusing to give a charge to the same effect requested by defendant.

3. **Same—Negligence—Statutory Duty.**

The violation of a statutory duty, such as a failure to put out, as required by a

city's ordinances, danger signals at night where a ditch is being dug across a street, is negligence as a matter of law, and the court may so charge.

**4. City—Liability for Street Injury—Implied Consent.**

Where a city impliedly consents to the temporary digging of a ditch in its streets by private parties, it is liable for injuries resulting from their negligence in failing to put out danger signals or barriers to guard it at night.

**5. Same—Joint Tort Feasors—City May Recover Over.**

The city's consent will be implied only to the digging of the ditch in a lawful manner and in compliance with its ordinances requiring such temporary obstruction to be properly guarded; and not being a joint tort feasor in the failure to properly guard the ditch, it may have judgment over against the parties doing the work for the amount adjudged against it for injuries resulting from their negligence in failing to put out danger signals.

**6. Same—License—Presumption—Negligence.**

License to commit negligence will not be presumed against the city from the overlooking by it of negligence committed on former occasions in similar cases.

**7. Same—Attorney Fees.**

A city can not recover attorney's fees against parties digging a ditch in the streets and failing to properly guard it, in addition to a judgment over against them for damages recovered from the city for injuries resulting from such negligence.

APPEAL from Navarro. Tried below before Hon. L. B. COBB.

*A. B. Graham* and *John H. Rice,* for appellant.

*McKie & Autry, Frost, Neblett & Blanding, Stone & Lee,* and *Callicutt & Call,* for appellees.

TEMPLETON, ASSOCIATE JUSTICE.—The appellant, the city of Corsicana, is a municipal corporation, duly incorporated under the general laws of the State regulating the incorporation of cities and towns. It owns a sewer system, and one of the sewer mains is located underground in the center of North Fifteenth Street, one of the principal public streets of the city. The appellee L. M. Coates owned an unimproved lot fronting on said street, and in the summer of 1896 contracted with the appellees McCammon & Lang to build a house for him on said lot. As the work on the house progressed, it became necessary to connect the house sewer with the sewer main in the street, and the appellee C. A. Benton for that purpose dug a ditch from the sidewalk in front of the house to the middle of the street. The ditch was thirty or thirty-five feet long, four or five feet wide and five or six feet deep. Shortly after dark on the night of August 26, 1896, the appellee L. D. Tobin, while driving in his buggy with his wife and their two small children along said street, drove into the ditch. They were all thrown from the buggy, and he was slightly injured, receiving some bruises and a scalp wound. His wife's injuries were more serious; her left arm was broken and she, like her husband, received a scalp wound and some bruises. She was confined to her bed for some weeks and suffered greatly. The children were uninjured. The ditch was not barred or fenced, and there was no guard there to warn people traveling

the street of the danger. Some lighted lanterns had been hung up at the ditch, but because of some defect in the lanterns, the lights had gone out. It was negligence to leave the ditch not barred or fenced and unguarded and with no other danger signals than the said lanterns; and we find, on the issues between Tobin and the city, that the city is chargeable with such negligence. Tobin and his wife were using ordinary care for their safety when the accident occurred. Tobin sued the city, and also Coates, Benton, and McCammon & Lang, and, on a trial before a jury, recovered judgment against the city alone for $456.70. Judgment went against the city on its plea for judgment over against its codefendants.

The city complains of the judgment in favor of Tobin on three grounds only, and there is no merit in either of them.

The first complaint is that Mrs. Tobin was permitted to testify, in rebuttal, concerning the nature and extent of her injuries, when the city had introduced no evidence on that issue. This matter was in the sound discretion of the court, and it is not shown that there was an abuse of discretion. The testimony of Mrs. Tobin was substantially the same as that of her husband, who had testified fully as to the matters in question. Her testimony was simply corroborative; there was nothing new or surprising in it. Besides, she testified by deposition which was on file when the trial begun. The city, therefore, had notice of her evidence, and must be supposed to have been ready to meet it. It does not appear that after Mrs. Tobin testified the city asked and was refused permission to introduce any other evidence on this issue. Also, the size of the verdict in the case conclusively shows that the jury was not unduly influenced by this testimony. It will be borne in mind that the evidence objected to relates solely to the question of the nature and extent of the injuries sustained by Mrs. Tobin, and in no way bears on any issue involving the right of the plaintiff to recover. There was no error in the action of the court in admitting the testimony.

A special charge was requested to the effect that the burden of proof was on the plaintiff to establish by a preponderance of the testimony all the facts necessary to entitle him to recover. This charge was refused. In the main charge the jury was instructed that the plaintiff was required to prove the facts necessary to make out his case by a preponderance of the evidence. This having been done, we are unable to see how the city was injured by the refusal of the special charge. Railway v. Douglas, 76 Texas, 332; Railway v. Locker, 78 Texas, 284.

At the request of Tobin, the court gave a special charge to the effect that it was negligence if proper barriers and danger signals were not put out and maintained. It is contended that the question of negligence is one of fact, and that this charge invaded the province of the jury. It is a sufficient reply to this contention to say that the ordinances of the city required this to be done and the court was authorized to instruct the jury that a failure to comply with the ordinances was negligence, and that, if the injury complained of by Tobin was caused by such failure,

Tobin, if not negligent himself, was entitled to recover. The violation of a statutory duty is negligence as a matter of law. Of course, the questions as to whether the statutory duty had been violated, and as to who had violated it, and as to whether the accident was the result of its violation, are all questions of fact to be determined by the jury.

The judgment in favor of Tobin against the city is affirmed.

The issues between the city and its codefendants are more complicated. The city sought judgment over against all of them on the ground that the ditch was dug by them, and that it was their negligence, and not the negligence of the city, that caused the accident. The city's codefendants denied liability to the city, on the ground that they dug the ditch with the consent of the city, and that if they were negligent, the city was also negligent, and was not therefore entitled to contribution. They also claimed that the ordinances relating to the digging of sewer ditches had been habitually violated with the knowledge of the city, and contended, for that reason, that if they dug the ditch without complying with the city statutes, their failure to do so was waived by such action on the part of the city.

The ordinances of the city provided that no private sewer should be connected with the city sewer except upon written petition therefor approved by the sanitation committee. This ordinance had been in existence several years before the accident, and seems never to have been observed. At any rate, it was commonly and habitually violated, and the city had knowledge of such violations and never tried to prevent same. The city's codefendants, in digging the ditch in question, made no attempt to comply with the ordinance. The mayor of the city knew that the ditch was being dug, but that was the extent of his knowledge. The city did not actually assume control or direction of the digging of the ditch; in fact, did nothing whatever concerning it. Benton dug the ditch, and undertook the duty of putting out danger signals. It is not shown who employed him to do the work. He had talked with Coates, and thought he was employed by Coates, who, on the other hand, thought he was assisting Benton in getting the job from McCammon & Lang. Coates and McCammon & Lang knew that he was doing the work and the purposes for which he was doing it. It was part of the contract between Coates and McCammon & Lang that the latter should make the sewer connection. Benton put up the danger signals on the night of the accident, and did it so negligently that the lights went out, and Tobin and wife were injured by reason of the failure of those concerned in digging the ditch to have it properly guarded.

The court charged the jury that if the ditch was dug with the consent of the city, to find against the city on its plea for indemnity, but that if it was dug without the consent of the city, to find for it on said plea. The court appears to have proceeded on the theory that if the city consented that the ditch be dug, then it was negligence for the city to fail to see that it was properly dug and guarded, and being negligent itself, was not entitled to contribution from those concerned in digging

the ditch. The correctness of this view is presented here for revision. We have not been cited to a decision by any of the courts of this State upon the question, and, so far as this State is concerned, it seems to be the first time it has been raised.

If the ditch in question was dug without the knowledge or consent of the city, and in violation of its ordinances, then those digging the ditch were trespassers, and were liable both to the public and to the city for any injury that resulted from their unlawful acts. In such case the city was not liable to any one injured by reason of the digging of the ditch, unless it negligently failed to discover and prevent the illegal use of its streets. In any event, the city owed no duty to those digging the ditch, and, not being intentionally at fault or an active agent in the commission of the wrong, could recover over against the trespassers for the results of their willful wrongdoing that had fallen upon the city. If the ditch was dug with the consent of the city, then other rights and duties existed. No express consent was shown, and we infer that it can not be shown. The question as to whether there was implied consent therefore becomes material. Evidence showing the nonenforcement of the ordinances regulating the making of sewer connections, and knowledge by the city of the actual digging of the ditch in question, was admissible as tending to show that the city impliedly consented that the ditch should be dug. It may be held that the evidence was sufficient to show such implied consent to the digging of the ditch, but it will not be further implied that the city consented that the ditch should be dug in an unlawful manner, or should be left unguarded. It will rather be implied that the city consented only that the ditch should be dug in a lawful manner, and should be properly guarded, and that those digging the ditch agreed that they would so dig and guard it. Having consented that a dangerous obstruction should be placed in its street, the city owed the public the duty of protecting them against the danger arising therefrom, that is, in this case, of seeing that the ditch was properly dug and securely guarded, and the city was liable in damages to any one who sustained injury by reason of its failure to perform this duty. But it owed no duty to those engaged in digging the ditch to see that it was properly dug or guarded. Those digging the ditch, however, had impliedly agreed that they would do their work in a safe and proper manner, and they owed the duty both to the public and to the city to do so, and if they failed to do so, and any one was injured as the result of such failure, then they are liable to the persons so injured, and in case of recovery by the injured persons of their damages against the city, the latter should recover against those whose negligence was the proximate cause of the injury. Those engaged in digging the ditch were not employes of the city, doing the work for it and under its direction. They were doing private work for themselves, and the law required them to do their work properly, and the city, so far as the relation between it and them was concerned, had the right to presume that they would do their work in a proper manner, and they can not escape the consequences of a

negligent failure to do their duty because of a neglect of the city to perform a duty it owed to the public with which they were not concerned. It is true that they also owed a duty to the public, but such duty rested upon different grounds than the grounds upon which the city's duty to the public was based. While both they and the city owed the duty to the public of protecting the public against the danger arising from the construction of the ditch, the duty was not mutual in the sense that it arose from the acting together of the parties. They were not acting together; the city was not digging the ditch, and as to its codefendants had not assumed any duty in relation to it. They, on the other hand, were digging the ditch and had assumed the duty to the city of doing their work in a legal and proper manner. It was a lawful work they had undertaken to do, and the city had consented to their doing it. In such case the consent of the city to the doing of a lawful work in a lawful manner, would not make the city a co-wrongdoer with those doing the work as to acts of negligence committed by them during the progress of the work. The city would not be in pari delicto, and, not having assisted in the act of negligence that produced the injury, could recover over against those whose negligence caused its loss. The rule that one joint tort feasor is not entitled to contribution from his co-tort feasors would not apply. In fact, this is not a question of contribution; it is a question of indemnity against one whose negligence was the proximate cause of the injury, by one who had suffered as a result of such negligence, where the negligence consisted of the violation of a duty owing by the one guilty of the negligence to the one who suffered from it.

It may be urged that the city habitually permitted excavations to be made in its streets, as the one in question was made, and to be guarded as this one was, and that therefore the city consented that this ditch should be dug and guarded as was done in this case. In reply it may be said that what was negligence in this case might not have been negligence under different circumstances, and that the court, on the trial of this cause, can not go into the investigation of former cases and determine whether there was negligence in such cases. But the conclusive answer to the contention is, that license to commit negligence will not be presumed from the overlooking of negligence committed on former occasions in similar cases. If the ordinances of the city permitted such ditches to be guarded as this one was guarded, or, if there was no ordinance on the subject, and anyone, clothed with authority by the city to do so, had adopted a rule to that effect, then there might be some force in the contention; but such is not the case presented here, and hence we hold that the contention is not sound.

All those concerned in digging the ditch are responsible to the city for the consequences of their negligence that have fallen upon the city.

We believe that the views stated above are fully supported by authority. In Shearman & Redfield on Negligence, section 24a, it is said: "It is

not necessary that the plaintiff's damages should have resulted immediately from the defendant's negligence; it is enough if the plaintiff, being legally liable, though not personally in fault, for a third person's injuries, due to the defendant's negligence, has been compelled to answer therefor to the person injured. In such a case the principal delinquent is bound to indemnify his codelinquent, their fault being unequal; and this whether any contractual relation existed between them or not."

Again, in Lowell v. Boston & Lowell Railroad Corporation, 23 Pickering, 24, it is said: "Our law, however, does not in every case disallow an action, by one wrongdoer against another, to recover damages incurred in consequence of their joint offense. The rule is, 'in pari delicto potior est conditio defendentis.' If the parties are not equally criminal, the principal delinquent may be held responsible to his codelinquent for damages incurred by their joint offense. In respect to offenses in which is involved any moral delinquency or turpitude, all parties are deemed equally guilty, and courts will not enquire into their relative guilt. But where the offense is merely malum prohibitum, and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties, and to administer justice between them, although both parties are wrongdoers." See also Cooley on Torts, 144; Columbia v. Gaslight Co., 20 D. C., 39, and Gray v. Gaslight Co., 114 Mass., 149.

From these authorities it is clear that the mere fact of liability of one delinquent to the injured person will not prevent him from demanding indemnity or contribution from his codelinquent. That this doctrine is recognized in this State, see Railway v. Railway, 83 Texas, 509. See also Railway v. Delesdernier, 84 Texas, 82. But does the rule apply in favor of a municipal corporation in a case like this?

Mr. Dillon says: "If a municipal corporation be held liable for damages sustained in consequence of the unsafe condition of the sidewalks or streets, it has a remedy over against the person by whose wrongful act or conduct the sidewalk or street was rendered unsafe, unless the corporation was itself a wrongdoer, as between itself and the author of the nuisance." Dillon, Mun. Corp., sec. 1035.

In Elliot on Roads and Streets, page 656, it is said: "When a municipality has been compelled to pay damages for injuries sustained by reason of the wrongful acts of a third person which renders its streets unsafe, it has a remedy over against him, unless as to such person the corporation is itself a wrongdoer."

Mr. Cooley, in his work on Torts, page 625, thus states the rule: "If an individual, whether the adjoining owner or not, and whether the fee in the public way is in himself or in the public, does any act which renders the use of the street hazardous or less secure than it was left by the proper public authorities,—as by excavations made in the sidewalks, or by unsafe hatchways left therein, or by undermining the street or sidewalk,—he commits a nuisance, and he is liable to any person who, while exercising due care, is injured in consequence. If, however, he

has the consent of the proper public authorities, and what he does is consistent with the customary use of the way for private purposes,—as where he is making connection with a public sewer or with a gas main,—and he observes a degree of care proportioned to the danger, and is consequently chargeable with no fault, he can not be held responsible for accidental injuries, inasmuch as in such case he has failed in the observance of no duty. The question in all such cases is one of due and proper care."

Shearman & Redfield announce the rule as follows: "So a municipal corporation is entitled to recover, from one who has rendered a highway unsafe, damages which it has been compelled to pay to travelers." Sec. 24a.

The question has been discussed in Indiana, and the conclusion arrived at is stated thus: "A license to use a public street does not exculpate the licensee from the consequences of his negligence. Although a person may act under the authority of the municipality, he is not licensed to proceed carelessly and unskillfully, but is bound to use the privilege granted him with due care and reasonable skill." City of Elkhart v. Wickwire, 87 Ind., 80.

And the Supreme Court of the United States, in Chicago v. Robbins, 2 Black, 424, announces the city's right to indemnity as follows: "The city must be reimbursed unless it has been in fault. The rule of law is, that one of two joint wrongdoers can not have contribution from the other. It is difficult in this case to see how the city was to blame, and least of all how Robbins can impute blame to it. Robbins desired to erect a large storehouse, and to add to its convenience wished to excavate the earth in the sidewalk in front of his lot. Without express permission from the city, but under the implied license, he makes the area. No license can be presumed from the city to leave the area open and unguarded even for a single night. The privilege extended to Robbins was for his benefit alone, and the city derived no advantage from it, except incidentally. Robbins impliedly agreed with the city, that if he was permitted to dig the area, for his own benefit, he would do it in such a manner as to save the public from danger, and the city from harm. And he can not now say that true it is you gave me permission to make the area, but you neglected your duty in not directing me how to make it, and in not protecting it when in a dangerous condition. If this should be the law, there would be an end to all liability over to municipal corporations, and their rights would have to be determined by a different rule of decisions from the rights of private persons. Because the city is liable primarily to a sufferer by the insecure state of the streets, offers no reason why the person who permits or continues a nuisance at or near his premises should not pay the city for his wrongful act. The city gave no permission to Robbins to create a nuisance. It gave him permission to do a lawful and necessary work for his own convenience and benefit, and if, in the progress of the work, its original character was lost, and it became unlawful, the city is not in fault."

And on a second appeal of the same case the rule stated was reaffirmed. Robbins v. Chicago, 4 Wall., 676. See also, Dill. Mun. Corp., sec. 1027; Shearm. & Redf. on Neg., secs. 301, 384; Town of Centerville v. Woods, 57 Ind., 196; McNaughton v. City of Elkhart, 85 Ind., 387; Gridley v. City of Bloomington, 68 Ill., 50; Pfau v. Reynolds, 53 Ill., 213. Other authorities to the same effect might be cited, but we deem it unnecessary to do so.

We conclude, therefore, that the charge of the court was erroneous, and does not correctly state the rights and duties of the parties.

It is contended by the city that if it is entitled to a recovery over against the defendant, it is also entitled to recover its attorney's fees expended in defending plaintiff's suit. We can not give our assent to this proposition. If such fees are recoverable in any case involving simply the breach of a duty, they are not recoverable in a case where the duty violated is of the kind shown by the record before us.

Because the trial court did not properly instruct the jury upon the issues above considered, the judgment, as between the city and the appellees, Coates, Benton, and McCammon & Lang, is reversed, and, as to said appellees it remanded for another trial in accordance with this opinion.

*Affirmed as to Tobin.*
*Reversed and remanded as to the other appellees.*