## EASTERN STATES PETROLEUM CO., Inc., v. TEXAS & N. O. R. CO. et al.

### No. 1753.

Court of Civil Appeals of Texas. Eastland.

Feb. 18, 1938.

Rehearing Denied March 11, 1938.

Wood & Morrow, and Byles & Atkinson, all of Houston, for appellant.

Andrews, Kelley, Kurth & Campbell, of Houston, for appellees.

FUNDERBURK, Justice.

In consolidated suits by Mrs. Lucile Hall (suing in several capacities), the defendants Eastern States Petroleum Company, Inc., Port Terminal Railroad Association, Sugarland Railway Company, Texas & New Orleans Railroad Company, Missouri-Kansas & Texas Railroad Company of Texas, Gulf, Colorado & Santa Fé Railway Company, Burlington-Rock Island Railroad Company, Guy A. Thompson, trustee of Beaumont, Sour Lake & Western Railway Company, Guy A. Thompson, trustee of International-Great Northern Railroad Company, and Guy A. Thompson, trustee of St. Louis, Brownsville & Mexico Railway Company, were adjudged, jointly and severally, liable to plaintiff for damages for the death of her husband in the sum of $22,500. One defendant, Harris County Houston Ship Channel Navigation District, was impliedly adjudged not liable. The judgment was rendered in pursuance of an agreement of the parties. Contemporaneously with its rendition the judgment was paid in full, one half, or $11,250, by defendant Eastern States Petroleum Company, Inc., and the other half, or $11,250, by defendant Port Terminal Railroad Association.

Defendant Eastern States Petroleum Company, Inc., asserted a cross-action against its codefendants above named, and also Houston Belt & Terminal Railway Company. (The latter made no answer, is

not shown to have been served with citation, and is not mentioned in the judgment. We therefore presume it was dismissed. Moody v. Smoot, 78 Tex. 119, 14 S.W. 285). By such cross-action Eastern States Petroleum Company, Inc., sought to recover "judgment over against each and every such codefendant herein for contribution of a sum equal to the proportion of all the defendants named in said judgment rendered to the whole amount of such judgment." In the alternative, and in the event of judgment being rendered against Eastern States Petroleum Company, Inc., and one or more codefendants, not all of which should be adjudged liable for contribution in such proportion, it was prayed that said plaintiff in cross-action have judgment over against its codefendants, jointly and/or severally, for a sum equal to one-half of the total amount of any judgment rendered against it.

There was a comprehensive formal agreement of the parties as to the material facts relating to the issues raised by said cross-action. Parts of said agreement deemed necessary to be stated in the present connection are: That the Port Terminal Railroad Association and Eastern States Petroleum Company, Inc., were each independently guilty of the negligence charged by each against the other; that such negligence was active negligence in like degree, and was a proximate cause of the injuries to plaintiff. It was agreed that Port Terminal Railroad Association existed as the result of certain contracts between its members who were: The Navigation and Canal Commissioners of Harris County Houston Ship Channel Navigation District; Texas & New Orleans Railroad Company; the Sugarland Railway Company; Gulf, Colorado & Santa Fé Railway Company; Burlington-Rock Island Railroad Company; Missouri-Kansas & Texas Railroad Company of Texas; Guy A. Thompson, trustee of the International Great Northern Railroad Company; Guy A. Thompson, trustee of Beaumont, Sour Lake & Western Railway Company; and Guy A. Thompson, trustee of St. Louis, Brownsville & Mexico Railway Company. It was agreed that the Navigation and Canal Commissioners of Harris County Houston Ship Channel Navigation District, by reason of being a government agency, were not liable, and were not to be regarded as a member of said Port Terminal Railroad Association. It was further agreed that "all of the agents, servants and employees of the Port Terminal Railroad Association at all times material hereto, including any agents, servants and employees that may have been involved in or material to the accident involved in this suit were at all times material hereto employees of said association, receiving their compensation from such association, and except in so far as they might necessarily be employees of the various members of the association by virtue of said contracts forming the same and the carrying out of said contracts they were not employees of any of said individual members of the association." It was also agreed in effect that each and all of the defendants in the cross-action, other than the Port Terminal Railroad Association (and excluding, of course, said Navigation District and Houston Belt & Terminal Railway Company, the latter presumably dismissed), were not guilty of any negligence, save and except as the negligence of said Port Terminal Railroad Association, its officers and employees, was, in legal effect, the negligence of each and all of said codefendants. It was the purpose of said agreement, as therein stated, "to leave for the determination of the court the sole question of law as to what amount, if any, the defendant Eastern States Petroleum Co. Inc., having paid one half of the judgment, is entitled to recover from any of the other defendants herein by virtue of the payment of one half of said judgment." Upon the agreed facts the trial court rendered its judgment to the effect that Eastern States Petroleum Company, Inc., upon its cross-action against its said codefendants, take nothing. From that judgment the Eastern States Petroleum Company, Inc., has prosecuted this appeal. Further statement will be made as necessary in connection with the questions discussed in this opinion.

Appellant urges eight propositions. Of them, propositions 3 to 8, inclusive, refer to, and are based upon, assignments of error, each of which alleges as the ground of error therein the refusal of the court to make and file a particular conclusion of law stated by the appellant in the written request therefor. We are of the opinion that there was no error in the action of the trial judge in refusing to adopt and file such requested conclusions of law. If there be any precedent for such a procedure, we are not aware of it. Neither logic nor utility would seem to us to commend it. However, for the reasons presently to be stated, we find it unnecessary definitely to determine such question of practice.

All the issues of fact having been settled by a formal written agreement, the court had the single duty of declaring the proper judgment to be rendered. Under the circumstances, we think, the judgment rendered may itself be regarded as the judge's conclusion of law. We would, therefore, be inclined to hold that appellant's first assignment of error, which simply alleges as the ground of error the action of the court in entering the judgment, would be sufficient to present the questions which appellant by its brief indicates the purpose and desire to present for the determination of this court.

■ At any rate, appellant's second assignment of error, which specifies, as the ground of error, the action of the court in concluding, as a matter of law, that appellant was not entitled to the contribution sought from its codefendants certainly, we think, properly presents for our review the only question to be presented by any of the assignments of error.

There seems to be no difference of opinion that appellant's right to contribution under the agreed facts, if any it has, exists only because of the provisions of R.S. 1925, art. 2212. The relevant provisions of that statute read thus: "Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort, except in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants is given by statute or exists under the common law, shall, upon payment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment." This statute, we think, was unquestionably applicable as between appellant and Port Terminal Railroad Association, if it be assumed or determined that the latter was an entity sufficiently distinct from its members to possess the capacity to be sued and to be held to an independent liability. The plaintiff and appellant both assumed that it had such capacity, the former naming it a party defendant in the original suit, and the latter in its cross-action. According to the agreed facts there was no right of contribution or indemnity between these two defendants, unless such right was given by said statute. They were both, under the agreement, active wrongdoers in the same degree. With

reference to said statute it was said in Gattegno v. The Parisian, Tex.Com.App., 53 S.W.2d 1005, 1007, that: "Its evident purpose is to change the common-law rule as applied to joint tort-feasors *who are equally guilty as between each other.* In other words, under the above statute, where two persons are both actively guilty, or both passively guilty, of a tort which damages a third person, and the third person sues and recovers from them both, jointly and severally, if one pays the entire judgment he is entitled to have his codefendant contribute to him one-half such amount." (Italics ours.) As between appellant and Port Terminal Railroad Association the right of contribution was recognized by each paying one-half of the judgment, and thereby discharging as between them any possible liability for contribution.

The question is whether, after such payment, there still existed a right in appellant, by reason of its payment of one half of the judgment, to a further contribution from each of the five railroad companies, and the trustee of each of the three others, who, as codefendants, with appellant and said Port Terminal Railroad Association were adjudged liable, jointly and severally, to plaintiff for $22,500.

If the language of the statute be given literal effect and can be applied pro tanto where a defendant has paid less than the full amount of a judgment, it would appear to grant the right of contribution asserted, unless as between Port Terminal Railroad Association and its said several members there would exist a right in said members, or any of them, had they paid the judgment, to have recovery over against Port Terminal Railroad Association for the amount of such payment. If under such circumstances the right of indemnity, or of recovery over, existed, then the case would seem to come within an express exception declared in the statute, with the result that the statute by its own terms would not be applicable or effective to grant the right of contribution sought to be enforced. The exception from the operation of the statute seems to be clear as to "causes wherein the right * * * of indemnity, or of recovery, over, by and between the defendants * * * exists under the common law."

In its last analysis, giving literal effect to the language of the statute, the question at issue involves these two inquiries: (1) Whether Port Terminal Railroad Association had capacity to be sued and become a

"person against whom, with one or more others, a judgment" may be "rendered in" a "suit on an action arising out of, or based on tort." And (2) if so, whether the members of said association, or any of them, had a right of indemnity against it for any recovery against them. As bearing upon both these subjects of inquiry, it is deemed advisable further to supplement the foregoing statement of the agreed facts. The purpose of the association was: "on equal terms and conditions to provide impartial, efficient, unified and economical switching service by an independent and neutral organization separate and distinct from the organizations of, but for the benefit of, all the parties hereto, to serve publicly owned wharves, docks, elevators, or other water terminal facilities and publicly owned railroad facilities now existing or hereafter constructed on or immediately adjacent to either side of the Houston Ship Channel between the turning basin and Lynchburg so as to thereby afford every railroad entering the city of Houston access thereto without discrimination so far as may be. To provide the same character of switching service for all privately owned wharves, docks, elevators or other privately owned water terminals and for all privately owned industries now or hereafter constructed on or immediately adjacent to either side of the Houston Ship Channel as aforesaid." It was further provided in the contracts by which the association was formed that the control and management of the affairs of the association should be vested in a board of control consisting of one representative of each of the members; that the board of control shall exercise "complete authority and supervision over all operating affairs of the association" in accordance with the terms of the contract "and may provide whatever supervisory officers the board may consider necessary for proper conduct of the affairs of the association." The board of control was authorized to adopt rules and regulations such as it might deem appropriate and necessary to efficiently and economically perform the purposes contemplated and to facilitate the conduct of the affairs of the association. The railway tracks and facilities owned, leased, or constructed by the Harris County Houston Ship Channel Navigation District were turned over to the association for operation, and the Navigation and Canal Commissioners furnished the initial supply of tools and movable equipment necessary for the proper and efficient maintenance and operation of the facilities covered by the agreement. The cost and maintenance of the tracks and other property while under operation by the association was to be paid by the association. There was a provision for the leasing and using of tracks of the railroad members of the association, with a provision that they were not to be used except for association purposes without the consent of the owner. Provision was made for renting by the association of switch engines, cabooses, and work equipment required by the association from the railroad members, the repairs on which, while used by the association, to be paid for by it. In the beginning a working capital was furnished by the several members, and thereafter the fiscal affairs of the association were to be conducted as though it was an entirely separate identity from the members.

In the agreed facts it is stipulated that the board of control of the association had employed a named superintendent with power to employ and discharge employees and to engage in the terminal railway and switching business as contemplated in the contracts, and that such superintendent had employed the agents, servants, and employees engaged in the switching operations at all material times, and that it was the duty of the said superintendent in his capacity as such to furnish servants, agents, and employees employed by him to carry out work to be done under the terms of said contract with proper equipment for the discharge of their duties. That he did manage the affairs of said association and direct the work of the agents, servants, and employees in carrying out switching operations, as contemplated.

▆▆▆ We think the conclusion justified that Port Terminal Railroad Association under the agreed facts was an unincorporated association. It may be granted that in the absence of any enabling statute it was not an entity having the capacity as such to be sued and to be adjudged liable for damages. However, R.S.1925, art. 6133, provides that: "Any unincorporated * * * association * * * doing business in this State, may sue or be sued in any court of this State having jurisdiction of the subject matter in its company or distinguishing name; and it shall not be necessary to make the individual * * * members thereof parties to the suit." Under this statute we think the association in question had the capacity to be sued and that any judgment rendered against it could be executed out of its property. Brother-

hood of Railroad Trainmen v. Cook, Tex. Civ.App., 221 S.W. 1049, and authorities cited. The purposes of the association were properly incident to the charter powers of the member railroad corporations, and we are, therefore, of the opinion that the corporate character of said members is immaterial.

As an example of the matters within the corporate powers of railroads which may be performed through associations, it is said: "An agreement by a corporation to enter an employer's association organized to facilitate the business in which the corporation and other members of the association were engaged, and to prevent labor disputes between its members and their employees, was not beyond its corporate powers." 14a C.J. § 2139, p. 291. And again, "Notwithstanding a corporation has no power to enter into a partnership it may under a joint venture with others transact any business which is within the scope of its legitimate powers and thereby become liable on account of the fiduciary relation thus assumed." Id., § 2140, p. 293.

As said before, the Port Terminal Railroad Association, according to the agreed facts, was an active wrong doer, the same and in like degree as appellant. Were the members of Port Terminal Railroad Association also active wrongdoers in like degree? If they were not, then we think that before the enactment of the statute relied upon as creating the right of contribution claimed herein said members had the right of indemnity against the association. If the right of indemnity then existed, it was expressly excepted from the provisions of the statute. Before the statute was enacted a number of exceptions to the rule of nonliability of tort-feasors for contribution or indemnity had come to be recognized. In fact, as stated in Oats v. Dublin National Bank, 127 Tex. 2, 90 S.W.2d 824, 829, on the authority of 6 R.C.L. p. 1055, § 17, by reason of the many exceptions to the rule "its operation has been confined within very narrow limits." Those narrow limits mark the scope of operation of the statute according to its express provisions.

■ At the time of the enactment of the statute in question, one generally recognized exception to the rule of nonliability of tort feasors for contribution or indemnity was, "Where two persons are liable to another for tort, the active wrongdoer should indemnify the one whose wrong is only passive." Oats v. Dublin National

Bank, supra; Magnolia Petroleum Co. v. Long, 126 Tex. 195, 86 S.W.2d 450; New Nueces Hotel Co. v. Sorenson, 124 Tex. 175, 76 S.W.2d 488; Kampmann v. Rothwell, 101 Tex. 535, 109 S.W. 1089, 17 L.R. A.,N.S., 758; City of San Antonio v. Talerico, 98 Tex. 151, 81 S.W. 518; City of San Antonio v. Smith, 94 Tex. 266, 59 S.W. 1109; East Texas Public Service Co. v. Johnson, Tex.Com.App., 6 S.W.2d 344; Gattegno v. The Parisian, supra; Pullman Co. v. Norton, Tex.Civ.App., 91 S.W. 841; Southwestern T. & T. Co. v. Krause, Tex. Civ.App., 92 S.W. 431; Austin Elec. R. Co. v. Faust, 63 Tex.Civ.App. 91, 133 S.W. 449; City of Weatherford Water, Light & Ice Co. v. Veit, Tex.Civ.App., 196 S.W. 986.

There was one exception to the general rule, regarding which the terms "active negligence," "passive negligence," "active wrongdoer," and "passive wrongdoer" are not applicable in the same sense as applied to another exception. Because of this we have in our investigation found many decisions difficult to understand and reconcile one with another. The exception we now refer to is believed to be the same as that referred to by Judge Smedley in Oats v. Dublin National Bank, supra, when, after mentioning certain exceptions, including that stated above in the language of the same opinion, he said: "In other cases the principal delinquent is often held responsible to the codelinquent when under the facts the parties are not equally culpable." That was a more general statement of the principle applied in that case, namely, "That an agent, who in the performance of his duties for his principal incurs liability for an act not morally wrong, may have indemnity from the principal," citing Cooley on Torts, 3d Ed., vol. 1, pp. 255, 256, § 168; Culmer v. Wilson, 13 Utah 129, 44 P. 833, 57 Am.St.Rep. 713, 718; Horrabin v. Des Moines, 198 Iowa 549, 199 N.W. 988, 38 A.L.R. 554, 557. As to such exception it is apparent that the terms "active" and "passive" wrongdoers are not strictly accurate. The exception was applied to two defendants who were held liable for damages for a joint conversion of mortgaged property. The wrong of each was necessarily the same, and therefore in the ordinary sense of the terms the wrong of one could not be active and the other passive. The true test was the relative degree of culpability as between the parties. The leading case recognizing this exception was Lowell v. Boston & Lowell Railroad Corp., 23 Pick. 24, 32, 40 Mass. 24, 34 Am.Dec.

33, wherein, as quoted in Washington Gaslight Co. v. Dist. of Columbia, 161 U.S. 316, 327, 16 S.Ct. 564, 40 L.Ed. 712, it was said: "Our law, however, does not in every case disallow an action, by one wrongdoer against another, to recover damages incurred in consequence of their joint offence. The rule is, in pari delicto potior est conditio defendentis. If the parties are not equally criminal, the principal delinquent may be held responsible to his co-delinquent for damages incurred by their joint offence. In respect to offences, in which is involved any moral delinquency or turpitude, all parties are deemed equally guilty, and courts will not inquire into their relative guilt. But where the offense is merely malum prohibitum, and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties, and to administer justice between them, although both parties are wrong-doers."

The application of this exception may operate to give a right of indemnity to an agent or servant against the principal or master, as was held in Oats v. Dublin National Bank, supra. It may also operate to give a right of indemnity to a principal or master against an agent or servant, as in Kampmann v. Rothwell, 101 Tex. 535, 109 S.W. 1089, 17 L.R.A.,N.S., 758. In Kampmann v. Rothwell, supra, F & B were employed by Mrs. Kampmann to repair a sidewalk. Their negligence (an act of omission, by the way) caused injuries to Rothwell. Mrs. Kampmann, the employer, and F & B, the employees, were held jointly and severally liable to Rothwell. The main question in the case was whether F & B were independent contractors or servants, and therefore Mrs. Kampmann not liable in any event. With the decision upon this point we are not here concerned because it was held that whether F & B were independent contractors or servants, Mrs. Kampmann had a right of indemnity against them. *There was but one wrong involved.* While all the defendants owed the same duty to plaintiff and all violated it in the same way, F & B, by reason of their relation to Mrs. Kampmann, owed her a further duty which they violated. Because the duty was upon the employees and therefore they were not equally culpable as between themselves, the employer was held to have the right of indemnity. Although Mrs. Kampmann could not delegate to her employees the performance of her duties to the public, including the injured plaintiff, so as to absolve herself from liability, she could, and did, so delegate it as to make her wrong less culpable than that of the employees selected to do the work for her.

Upon a different state of facts the principle of this same exception should be regarded, we think, as having ruled the decision in City of San Antonio v. Smith supra. There the negligence of the city, the sufficiency of the allegations of which was as against a general demurrer sustained by the court, was different from the negligence of the city's tenants. The negligence of each, however, was active in the ordinary sense of the word. The city's negligence was that it continued to use a sewer farm as a place for the reception of sewerage after the tenants had, by their own wrong, so dealt with the farm that the sewerage was turned into the creek. That a violation of duty owing by the tenants to the city was recognized as important, if not controlling, is shown by the fact that the point was urged that the tenants had not contracted to indemnify the city. The court held that the duty existed by implication from the circumstances. It is difficult to list the Texas cases recognizing this exception, partly due to the fact that in many cases the principle of two or more exceptions was equally applicable. Among those sustaining the right of indemnity where the wrong of the defendants was the same but there was a duty of one to another imposed by contract, or law, or a right of reliance by one upon another so as to render them culpable in different degrees, may be mentioned Pullman Co. v. Norton, supra; Ft. Worth Street Ry. Co. v. Allen, Tex.Civ. App., 39 S.W. 125; Young Men's Christian Ass'n v. Jasse, Tex.Civ.App., 183 S.W. 867; City of Corsicana v. Tobin, 23 Tex. Civ.App. 492, 57 S.W. 319; Adams v. First Nat. Bank, Tex.Civ.App., 178 S.W. 993. A number of decisions holding there was no right of indemnity may be distinguished, we think, upon the sole ground that there was no duty owing by one tort feasor to another.

We have already shown that the principle of this exception may be applicable to principal and agent and master and servant. In 6 R.C.L. 1058, § 18, it is said: "Applying the same limitation on the general rule where a servant has committed a tort for which his master is constructively liable, the master is entitled to exoneration from the servant." Robertson v. City of Paducah, 146 Ky. 188, 142 S.W. 370, 40 L.R.

A.,N.S., 1153 and note; Memphis & C. R. Co. v. Greer, 87 Tenn. 698, 11 S.W. 931, 4 L.R.A. 858 and note; 13 C.J. 831, § 24; Georgia S. & F. R. Co. v. Jossey, 105 Ga. ·271, 31 S.E. 179; McGonigle v. Gryphan, 201 Wis. 269, 229 N.W. 81; Hoskins v. Hotel Randolph Co., 203 Iowa 1152, 211 N.W. 423, 65 A.L.R. 1125; Betcher v. McChesney, 255 Pa. 394, 100 A. 124. From the last-cited case, we quote: "The immediate proximate cause of plaintiff's injury was the negligent act of one Rineman, who at the time of the accident was an employe of the defendant and engaged about the latter's business. * * * Where that relation exists, the law imputes to the master the negligence of the servant, and the doctrine of respondeat superior applies. This does not mean that the master in such case is only secondarily liable. He is made primarily liable, and the injured party may sue either as he elects. So he may do when his injury results from the joint negligence of several, with this distinction, however: When the action is brought against one joint tort-feasor, and compensation is recovered from him, the one so compelled to pay may not enforce contribution from the others, notwithstanding they stand in like transgression with himself; whereas, if the party sued be the employer, chargeable only with imputed negligence, and recovery be had against him, he can maintain his action over against the servant for indemnity."

■ After careful investigation, it is our conclusion that Port Terminal Railroad Association, whether it be regarded as an ineffective partnership, a joint venture, or as an agent of the several members, was, as shown by the agreed facts, intrusted with the duty and responsibility of conducting a terminal railroad business, including the furnishing of proper equipment and supplies and the making and enforcing of proper rules and regulations for the conduct of the business, to the end, among other things, of protecting its employees and others from injuries and avoiding occasion for claims for any such against the constituent members. Had the association been incorporated the members would not have been liable to the plaintiff. The Port Terminal Railroad Association, by the breach of its duty to plaintiff, breached also a duty to the defendant members. It could have no indemnity against the members. But as we see it the principles hereinbefore discussed show that within an express exception provided in the statute in question, the defendant members have a right of indemnity against the association. This may be made to appear clearer by considering the powers and duties of Drake, the superintendent. Under the board of control he possessed all the powers and owed all the duties of the association. Certainly, we think, had he been employed by the several members of the association and given the same powers and charged with the same duties, his wrong in this case and that of the members could not be considered of the same degree of culpability. Certainly it can be said that Drake would have violated a duty to the members and the members violated no duty to Drake.

The reasoning in Martindale v. Griffin, 233 App.Div. 510, 253 N.Y.S. 578, chiefly relied upon by appellees, is plausible. As referring to the New York statute it seems to accord with the views expressed by Judge Critz in Gattegno v. The Parisian, supra, in reference to our statute, that it was intended "to change the common-law rule as applied to joint tort-feasors *who are equally guilty as between each other.*" (Italics ours.) But our statute, by the express exceptions, excluded from its operation all except joint tort-feasors who are equally guilty as between each other. It therefore results, we think, that the statute does apply to all defendants not excluded by the exceptions.

It is our conclusion that the judgment of the trial court should be affirmed. It is accordingly so ordered.